THE CROWN CORK AND SEAL CO. OF BALTI-
MORE *vs.* THE STATE OF MARYLAND. SAME
*vs.* JOHN F. PARLETT, CITY COLLECTOR.

*Taxation—Patent Rights—Assessment of Shares of Stock in Cor-
porations—Constitutional Law.*

Under the provisions of Code, Art. 81, relating to the taxation of
shares of stock in corporations, the Tax Commissioner is directed
to deduct from the aggregate value of all the shares, the assessed
value of the real estate owned by the corporation, to divide the resi-
duum by the number of shares, and the quotient is declared to be
the taxable value of each share. The tax in such case is not levied
upon the stock itself nor upon the corporation, but upon the owners
of the shares, although the officers of the corporation are required
to collect it. The shares are assessed according to their value with-
out regard to what particular property or rights create that value.

The fact that the capital stock of a corporation is principally invested
in patent rights granted by the United States does not exempt the
owners of the shares of stock from taxation upon the real value of
such shares, or entitle them to claim that the value of the patents
should be deducted from the aggregate value of the shares.

A State tax levied upon the shareholders in a corporation owning pat-
ent rights, according to the value of the shares, is not in violation of
the Constitution of the United States, Art. 1, sec. 8, by which the
Congress is authorized to promote the progress of science by secur-
ing for a limited time to inventors the exclusive right to their in-
ventions.

Appeals from the Court of Common Pleas and the Su-
perior Court of Baltimore City (DOBLER, J.)

The cause was argued before McSHERRY, C. J., BRYAN,
FOWLER, BRISCOE, ROBERTS, BOYD and PEARCE, JJ. (April
22, 1898).

*William A. Fisher* and *M. E. Olmsted* (with whom was
*Robert H. Parkinson* on the brief), for the appellant.

1. The tax in question is upon the shares of stock in the
hands of the shareholders as their property and is not upon
the corporation or upon its capital.

2. It is the Maryland doctrine, established by decisions beginning the year 1841, that the capital stock in the hands of the shareholders is so completely thè representative of the property of the corporation that the taxation of the one excludes the taxation of the other, and the exemption of the one from taxation operates as the exemption of the other. *Tax cases*, 12 Gill & Johns. 117 ; *Gordon* v. *M. & C. C.*, 5 Gill, 231; *M. & C. C. of Balto.* v. *B. & O. R. R. Co.*, 6 Gill, 239 ; *County Comrs.* v. *A. & E. R. Co.*, 47 Md. 611; *State* v. *B. & O. R. Co.*, 48 Md. 49 ; *County Comrs.* v. *Farmers' Bank*, 48 Md. 117. The cases of *Bank of Commerce* v. *New York City*, 2 Black, 620 ; *Van Allen* v. *The Assessors*, 3 Wall. 573 ; *Bradley* v. *The People*, 4 Wall. 459, &c., concede that when the tax is upon the capital of the corporation itself, non-taxable securities must be credited and deducted. They differ only with the Maryland cases in denying that the shares represent the capital.

3. If the Maryland doctrine is to be adhered to, then it is evident that the shares have been unlawfully assessed, because no allowance has been made for the United States patents. As a matter of fact the whole value of the little bottling sealing devices of the appellant results from the protection of their United States patents. They are very simple in construction, and if the patent protections were withdrawn, the business would not be worth pursuing, as any mechanic could make them. It is submitted that there can be no doubt that the United States patents are non-taxable. *Comm.* v. *Westinghouse Co.*, 151 Pa. St. 265.

If it be conceded that the patents now owned by the appellant were not taxable in this State when owned by the patentee (and under the doctrine *McCulloch* v. *Maryland*, 4 Wheaton, 316 ; *Weston* v. *City of Charleston*, 2 Pet. 449, and *California* v. *Pacific Railroad Co.*, 127 U. S. 1., this cannot be controverted), they did not become taxable when assigned to the corporation, and this result cannot be evaded by any disguise. Whatever valuation of the capital stock of the corporation is dependent upon these patents, is open

to every objection urged in the cases above cited. It is common for patents to be granted or assigned to corporations which own no other property and whose assets have no value, except what is given them by such patents. Their property is something which has no existence except as called into being and continued in force by the Federal law, and which vanishes whenever the franchises terminate or become inoperative or invalid under the provisions of that law. The value represented by their capital stock is not a value which has been withdrawn from the property of the State, or which in any aspect is reachable by State assessments, but is the creation of the Federal Government for a specific purpose and equally pervades and effects all other territory of the United States. A patent is simply an emanation from the sovereign authority of the United States conferred upon the owner of the patent (whether natural, individual or corporation, original patentee or assignee) empowering him to *exclude all others* from making, using or selling a certain invention in all parts of the United States for a specified period, subject to certain conditions, over which the State has no control. It confers no right except that of *exclusion.* It does not, as popularly supposed, confer a right to make, use or sell any device which the patentee would not have been entitled to make, use or sell if no patent had been granted, but only protection in the *exclusive* manufacture, sale and use, in all parts of the country, of what in the absence of a patent, the patentee could make, use and sell *in common* with others. If the patent includes any elements which are already the subject of other patents, the patentee acquires through it no right to use those elements. The patent does not purport to grant any such right. The right to the patent does not depend upon whether the machine or device embraced in it is one which the patentee has the right to make, use or sell, or one which is already subordinate to prior patents, but upon whether it embraces any improvement which the patentee is entitled to exclude others from using. His patent merely gives

him the right to prevent others from using what is peculiar to it, leaving the question whether he is entitled himself to make, use or sell what is exhibited in it, precisely where it would have been if no patent had been issued.   It is analagous to letters of marque for privateering, endowing the grantee with certain privileges emanating from the national sovereignty, the extent and duration of which are dependent upon considerations, over which the State has no control and the value of which may be wholly or mainly extra-territorial to the State, in which the grantee happens to reside or to be incorporated.   The value of such franchises is dependent upon conditions of defeasance and invalidation which the Federal statute imposes upon the grant.   Any appraisement of its value would involve, anticipating the decisions of the Federal Courts upon the nature, scope and validity of rights created and existing under Federal grants, controlled by Federal statutes and subject to the exclusive jurisdiction of Federal Courts. The intention to tax such property (whether as part of the assets of a corporation or otherwise), is not to be inferred unless specifically and unmistakably provided for in the State statute.   If it were so provided, the statute would be, to this extent, invalid.

*John V. L. Findlay, City Counsellor*, and *Leon E. Greenbaum, City Attorney*, for City Collector, appellee.

The corporation does not own the stock, and is not treated as the owner of such under our revenue system.   The patents, as well as the other property, both real and personal, belong to the corporation.   There is no attempt to tax the patents specifically, they are in fact exempt, as much so as if there had been an express provision of law exempting them.   The stock, in the aggregate, is taxed not against the corporation, but against its owners, the stockholders. The corporation is only the agent to pay what is taxed against the individual stockholders and charges the amount

paid against each share.    *Code*, Art. 81, sec. 141; *Insurance Co.* v. *M. & C. C.*, 23 Md. 311.

The assessment is not against the property of the corporation, but against the property of the stockholder. *American Coal Company* v. *County Commrs. of Allegany*, 59 Md. 197 ; *U. S. Electric Co.* v. *State*, 79 Md. 70.    Investments in extra-territorial real estate, although helping to make value of stock which represents all the property of the corporation, not abateable in fixing value of stock.    59 Md. 193.    Reason—not only difficulty in tracing such investments, but because *" the true criterion, as fixed by the statute, is the true value of the stock without reference to the question where or in what manner or nature of property or security the capital stock may be invested."    Kirtland* v. *Hotchkiss*, 100 U. S. 491; *Nevada Bank* v. *Sedgwick*, 104 U. S. 111.    But this very question has been settled in the bank tax cases by the Supreme Court of the United States.    *Van Allen* v. *The Assessors*, 3 Wall. 573.    Mr. Evarts and others argued in this case that there was no difference in the effect between taxing the whole capital stock of the bank to the bank, and taxing the stock distributively in the hands of the shareholders, and as the aggregate of the capital stock was invested in Government bonds expressly exempted from taxation, he contended that there could be no tax levied on the aggregate, and therefore none on the individual shareholders, but the Court held differently, and affirmed the legality of the State tax on shares of National Bank stock.

Exemption of property of corporation will not exempt owner of the stock.    *Nat. Bank* v. *Commonwealth*, 9 Wall. 359 ; *Batterson* v. *Town of Hartford*, 50 Conn. 558 ; *Home Ins. Co.* v. *New York*, 134 U. S. 594 ; *W. U. Telegraph Co.* v. *Mass.*, 125 U. S. 530 ; *Delaware Railroad Tax*, 18 Wall. 206 ; *Farrington* v. *Tennessee*, 95 U. S. 686.

*Robert Ludlow Preston* (with whom were *J. Alex. Preston* and *Alex. Preston* on the brief), for the State of Maryland, appellee.

The exemption of property from taxation does not exempt the value of shares of stock to the extent of the value of such property.   Such is not and never has been the law in Maryland.   There have been a number of decisions in this State which say that the exemption from taxation of the shares of stock of a corporation exempts its property, but it must be borne in mind that these decisions were founded on legislative enactments, by which the Legislature *intended* to exempt the corporations from taxation, because such exemption was considered to be beneficial to the State.   The questions raised in those cases, was as to the *intention* of the Legislature to exempt from taxation certain corporations, and in passing upon those questions, this Court said, in a number of cases, that to allow the Legislature to exempt the shares of stock of a corporation, and then to permit the State to tax its property, would be subversive of the object for which the acts were passed, and would defeat the intention of the Legislature.   In view of these facts, as we understand the decisions, this Court laid down the principle that the stock represented all the property of the corporation, and that the exemption of the former from taxation by the Legislature, exempted the latter.   In no case has this Court held that the exemption of the property of a corporation was an exemption of the shares of stock.   See *U. S. Electric Co.* v. *State,* 79 Md. 70 ; *Ins. Co.* v. *Mayor,* 23 Md. 311; *Mayor, etc.,* v. *Canton Co.,* 63 Md. 218.

The ownership of patent rights carries with it no exemption from State laws, wherein the business of the owner of the patent is carried on.   *Daniel Jordan* v. *The Assessors of Dayton,* 4 Ohio, 294 ; *State of Ohio* v. *Telephone Co.,* 36 Ohio St. 297 ; *Palmer* v. *The State,* 39 Ohio St. 236.   Not only can the State *regulate* the use of patents within its boundaries, but may even prevent the owner from selling or disposing of the articles manufactured under his patent. *Patterson* v. *Kentucky,* 97 U. S. 501; *Webber* v. *Virginia,* 103 U. S. 344.   In the former case the Supreme Court

affirmed the judgment of the Supreme Court of Kentucky, declaring valid a law of that State prohibiting the sale of an illuminating oil not up to a certain standard, even against the owner of a patent granted by the United States, who was selling the article made under the patent.

The only case cited which upholds the contention that capital stock invested in patent rights cannot be taxed, is that of the *Commonwealth* v. *Westinghouse Electric and Manufacturing Co.*, 151 Penna. 265. With all due respect, we say that the decision in this case is directly contrary to the weight of authority, and especially to the decisions of the Supreme Court of the United States. But admitting that it may be good law in Pennsylvania, we submit that it has no application to this State. The opinion of the lower Court, adopted by the Supreme Court, plainly shows this. On page 270 the Court says : (The tax) " being upon the capital stock, it is a tax upon the company's property and assets." In Maryland, as we have seen, a tax upon *the stock* is not a tax upon *the assets* of the company, nor is this the view of the United States Supreme Court. *U. S. E. Power and Light Co.* v. *State*, 79 Md. 70; *Bank of Commerce* v. *Tennessee*, 161 U. S. 146. In *People, ex rel., the Edison, &c., Co.* v. *Campbell, Comptroller*, the whole capital stock of the corporation was invested in United States patents, yet it was held to be subject to taxation by the New York Court of Appeals. 138 New York, 543. Where shares of stock are invested in United States bonds, in assessing the value of the stock, the value of the bonds do not have to be deducted from the total value of the cap-ital stock. *People, &c.,* v. *Home Ins. Co.*, 92 N. Y. 328. The proper test of the value of stock is its earning power, not what are the assets of the corporation. *People, &c.,* v. *Bell Telephone Co.*, 117 N. Y. 243.

ROBERTS, J., delivered the opinion of the Court.

This suit was brought by the State of Maryland in the Court of Common Pleas of Baltimore City to recover from

the appellant certain taxes assessed upon its capital stock and claimed to be due the State for the year 1895. The case was tried before the Court below, without the aid of a jury. At the trial below the State, appellee here, offered in evidence the tax bill properly certified, when it was admitted that the State Tax Commissioner had duly assessed the capital stock of the appellant, for the year 1895, and that the appellant refusing to abide by the action and determination of the Tax Commissioner, took its appeal to the Comptroller and Treasurer of the State, in accordance with the provisions of the Code, and it is conceded that the assessment on which the taxes are claimed, is in accordance with the valuation fixed by the Treasurer and Comptroller on such appeal. The appellee then closed its case and the appellant offered evidence of similar character to that of the appellee, showing the valuations of its stock as made by the Tax Commissioner and on appeal by the Comptroller and Treasurer, and that the same are proper evidence of the facts stated. The appellant, as shown by the record, was incorporated on the 9th of March, 1892, under the general incorporation laws of the State of Maryland, for the purpose of "acquiring, developing, improving, using, working or otherwise utilizing and disposing of the patented inventions, following, for which patents have been granted in the United States and Canada;" then follows a list of the patents referred to which do not require enumeration here. The appellant transacts its business in this State and elsewhere and owns real and personal property other than the patent rights mentioned herein. The aggregate authorized capital stock of the appellant is one million dollars, divided into ten thousand shares of the par value of one hundred dollars each. The charter of the appellant in express terms, provides that "the said corporation is formed upon the articles, conditions and provisions herein expressed and subject in all particulars to the limitations relating to corporations, which are contained in the general laws of this State." The appellant also offered evidence to show the

minutes of a meeting of its shareholders on the 10th of March, 1892, at which all of its stock was subscribed for, except four hundred and ninety-five shares, and paid for by a lot and factory and chattels to the value of $57,791.09 and the assignment of valuable United States patents, claimed to be essential to the business of the appellant, and it was further proved that the Canadian patents were never used by it, and that it has never engaged in the manufacture of its patented product in Canada.

The aforegoing statement substantially presents the facts essential to a proper understanding of the nature and character of the controversy, arising on this appeal. The appellee offered one instruction in the Court below which was granted and sought to exclude certain testimony, by means of four motions offered for that purpose, each of which was overruled by the Court. The appellant offered six prayers all of which were rejected except the fifth, which was granted. The finding and judgment being against the appellant, it prosecutes this appeal.

The questions here presented are important to the interests of both parties. Important to the appellee, not only because its revenues are affected by the determination of the issues here presented, but because it adopts and declares the rule of law to be adhered to in all cases of like character with the one now under consideration. It is clearly important to the appellant by virtue of the fact that it involves the question of its liability for the payment, *vel non*, of the taxes assessed upon a large and valuable property, which the Court of last resort of an adjoining sister State, whose decisions are entitled to and receive the highest consideration by this Court, has declared adversely to the contention of the appellee advanced and sought to be maintained on this appeal.

The leading question which this appeal presents is, whether in the assessment of the capital stock of the appellant company for purposes of taxation, the appellant is entitled to have the assessment limited to the value of *the*

*property* other than the patents granted by the United
States.   There is another question closely interwoven with
the main proposition just stated, and will be considered in
the course of this opinion, which relates to the constitu-
tionality, both Federal and State, of the contention of the
appellee.   It will not be necessary to burden the report of
this case with the various provisions of the  Code relating
to the taxation of the shares of stock of corporations in-
corporated under the laws of this State, as they are lengthy
and can be conveniently found by reference to sections 2,
4, 141 and 144 of the Code, contained in Article 81.

MR. CHIEF JUSTICE MCSHERRY speaking for this Court
n the case of *The Electric Power and Light Co.* v. *State,*
79 Md. 70, has forcibly said that, " The taxable value of
shares of capital stock is fixed by the State  Tax Commis-
sioner.   He is required by the statutes to deduct from the
aggregate value of all the shares of the capital stock of
banks and other corporations the assessed value of the real
estate owned by the company, and to divide the residuum
by the number of shares of the stock, and the quotient is
declared to be taxable value of each share for State pur-
poses of taxation.    Upon the valuation thus ascertained the
State tax is levied.    But the tax is not a tax upon the stock
or upon the corporation, but upon the owners of the shares
of stock, though the officers of the corporation are made
the agents of the State for the collection of the State tax.
It is not material what assets or other property make up
the value of the shares.   Those shares are property, and
under existing laws are taxable property.   They belong to
the stockholders respectively and individually, and when for
the sake of convenience in collecting the tax thereon, the
corporation pays the State tax upon these shares into the
State Treasury, it pays the tax not upon the company's own
property, nor for the company, but upon the property of
each stockholder and for each stockholder respectively, by
whom the company is entitled to be reimbursed.   Hence
when the owner of the shares is taxed on account of his

ownership and the tax is paid for him by the company, the
tax is not levied upon or collected from the corporation
at all."

This statement of the law recently announced by this
Court gives to the statute a construction so clear and free
of doubt that no suggestion of uncertainty can fairly arise
as to its meaning and effect.   Under the sections of the Code
just referred to, the taxes in controversy here have been
levied and assessed, without regard to the value of the
United States patents.   The State Tax Commissioner has,
in the proper discharge of his official duty, assessed the
value of the shares of stock in the appellant corporation, and
has certified and returned said valuation and assessment to
the Comptroller of the Treasury, who has duly notified the
appellant of such valuation and assessment, and upon appeal
the Comptroller and Treasurer have corrected the same and
made their final valuation and assessment, which is final and
absolute unless they shall have committed some error in
the discharge of their official duties.   It is insisted that they
have erroneously valued and assessed the Patent Rights in
question, and this is the chief grievance of the appellant.
But why should not the shares of stock in the appellant
corporation be valued and assessed and taxes paid thereon ?
The number of corporations incorporated under the laws of
this State, engaged in business here, employing vast sums
of money and possessed of extensive property rights, is
almost unlimited and yet most of them, in the proper and
successful management of their business, have been com-
pelled to purchase and use patent rights, to enable them to
compete successfully with other corporations engaged in a
similar business.   They are without exception compelled
to pay taxes on their shares of stock levied and assessed in
like manner with those in controversy here.   It is a total
misconception of the object sought to be maintained on this
appeal to assert that this is an effort to tax patent rights.
It is not, however, necessary to the determination of the
rights involved in this controversy, to decide any such ques-

tion.    It is a proposition about which there is no lingering doubt, that patent rights are personal property and entitled to the same protection as any other property (*Cammeyer* v. *Newton*, 94 U. S. 225); and it will remain for future consideration, whether a patent right may not of itself be a proper subject of taxation, but that as just stated is not a question necessary to be decided on this appeal.    It has been elsewhere maintained that a patent right resembles a franchise in being a privilege which concerns, and is intended to benefit the public, which depends for existence and preservation upon the authority which confers it.    It has also been argued in the hearing of this appeal that a patent contains a bargain made with the Government and the patentee, to be judged like other bargains.    Conceding both propositions to be correct, how does either tend to affect the questions under consideration here?  To say that the shares of stock of a corporation incorporated under the laws of this State cannot be taxed because the corporation enjoys certain *franchises*, the very use of which enables it to successfully carry on its business, would be to strike down our entire system of taxation relating to corporations.  And even if it be true that a patent right exists through the medium of a contract with the Federal Government, its only effect upon the value of the shares of stock of a corporation, which are unquestionably taxable, is to aid in the development of the business interest of such corporation, and largely multiply the chances of its successful management.    So that it is not a question as to how the value of the shares of stock of such corporation have been enhanced, whether by the aid of patent rights, or by the sale of the manufactured product obtained by the use of such patent rights, or by the superior business qualifications of the agents of the corporation, who manage and control its affairs.    It matters not how numerous nor how valuable its patent rights might have been at the inception of the appellant's business enterprise, the shares of its stock would now be comparatively valueless had not other agencies,

forceful and active, put life and energy into the undertaking. The Supreme Court of Ohio speaking with respect to the meaning of the Patent Laws of the United States, and quoted with approval in *Patterson* v. *Kentucky*, 97 U. S. 506, says : " The *sole* operation of the statute is to enable him to prevent others from using the products of his labors except with his consent." In the granting of patents, the Federal Government has never sought to do more, and in fact, has never exercised greater authority than to extend protection to the privilege, such as that granted by a patent for an invention, against the infringement of those who seek to invade it. A patent right, in its usual signification, means a privilege granted by the Government to the first inventor of a new and useful discovery or mode of manufacture, that he also shall be entitled, during a limited period, to the exclusive use and benefit thereof. After careful examination we have failed to discover any satisfactory authority, showing that the Government has ever yet indicated any intention of limiting the power of the States in dealing with a subject of this kind although involving patent rights. It is a proposition without support to seek to maintain that patent rights are agencies or instrumentalities of the General Government with which the States have no right, in any manner, to interfere. *Patterson* v. *Kentucky*, 97 U. S. 506 ; *Webber* v. *Virginia*, 103 U. S. 344. It is now well-settled law, as determined in *West. Union Tel. Co.* v. *Atty.-Genl.*, 125 U. S. 551–2, that " the agencies of the Federal Government are only exempted from State legislation, so far as that legislation may interfere with or impair their efficiency in performing the functions by which they are designed to serve that government." In the case of *Livingston* v. *Van Ingen*, 9 John. 507 (cited and approved in 97 U. S. 540, *supra*), CHANCELLOR KENT said that " the national power will be fully satisfied if the property created by patent be, for the given time, enjoyed and used exclusively, so far as under the laws of the several States, the property shall be deemed fit for toleration and use. There is no need of giving this

power any broader construction in order to attain the end for which it is granted, which was to reward the beneficent efforts of genius, and to encourage the useful arts." Mr. JUSTICE HARLAN in referring to the Ohio case and the New York case just quoted from in 97 U. S., *supra*, and pursuing much the same line of thought, remarks that : " The right which the patent primarily secures is the exclusive right in the discovery, which is an incorporeal right, or, in the language of LORD MANSFIELD, in *Miller* v. *Taylor*, 4 Burr, 2303, ' a property in motion, which has no corporeal tangible substance.' The enjoyment of that incorporeal right may be secured and protected by national authority against all hostile State legislation ; but the tangible property which comes into existence by the application of the discovery is not beyond the control as to its use of State legislation, simply because the inventor acquires a monopoly in the discovery."

We have given careful scrutiny to the various authorities, to which we have been referred, bearing upon the questions raised by this appeal, and have found the propositions contended for both novel and interesting. The result of our investigation is that we have found but two cases directly bearing upon the subject of the taxation of patent rights, as such, which is not the specific question to be determined on this appeal. The case which supports the theory of the exemption of patent rights from taxation is the case of the *Commonwealth* v. *Westinghouse Electric, &c., Co.*, 151 Pa. St. 265. The Supreme Court of Pennsylvania having filed no opinion, adopted that of the lower Court, from which we briefly quote and which sufficiently marks the distinction between the Pennsylvania case and the one now under consideration. The former case maintains that, " The tax being upon the capital stock, it is a tax upon the company's property and assets." This is not the law of Maryland and such view is not the accepted doctrine held by the U. S. Supreme Court. *Bank of Commerce* v. *Tennessee*, 161 U. S. 146. " Taxes being made the sole means by which sov-

ereignties can maintain their existence, any claim on the part of any one to be exempt from the full payment of his share of taxes on any portion of his property must, on that account, be clearly defined and founded upon plain language. It has been said that a well-founded doubt is fatal to the claim ; no implication will be indulged in for the purpose of construing the language used as giving the claim for exemption, where such claim is not founded upon the plain and clearly expressed intention of the taxing power." This Court as hereinbefore referred to, has through its Chief Justice, in 79 Md. *supra*, declared that, " The tax is not a tax upon the stock or upon the corporation, but upon the owners of the shares of stock, though the officers of the corporation are made the agents of the State for the collection of the State tax. It is not material what assets or other property make up the value of the shares. Those shares are property, and under existing laws are taxable property."

We have referred to the one case, that of 151 Pa. St. *supra*, which maintains the non-liability to taxation of patent rights ; the case of the *People* v. *Campbell*, 138 N. Y. 543, maintains a doctrine *directly* contrary to the Pennsylvania case. The New York case was a proceeding by *certiorari* to review the action of the State Comptroller in imposing a tax upon the relator, the Edison Electric Light Company, a domestic corporation, under the Corporation Tax Act. The entire capital stock of the relator was originally invested in patent rights. Corporations were formed in New York and other States, to whom the relator granted the right to use these patents, receiving in compensation stock in such corporations. It was decided that as to so much of such stock as was in corporations organized in New York, it was the capital of the relator employed in that State, and as such was a basis of taxation, but that the stock in corporations in other States was capital employed outside the State, and not taxable. It was also claimed in that case that the relator held bonds of foreign corporations, issued to it in payment for patent rights granted, and on this question it was

determined that so much of relator's capital as was invested in these bonds was a basis of taxation under the statute. In delivering the opinion of the Court, EARL, J., said: "It is sufficiently accurate for the purpose now in hand to say that the entire capital of the relator was originally invested in patent rights. Corporations were formed in various cities of this State, and to a large extent in cities outside of the State, to use these patents, and to those corporations the relator granted the right to use the patents, and in compensation for such grants it received stock of such corporations, and during the year 1891 it held such stocks and received the dividends declared thereon. As to so much of said stocks as was in corporations organized in this State, it cannot be doubted that its capital was employed in this State. So much of its capital, to-wit, its patents, as was used to purchase such stocks, was employed for that purpose, and was thus used for the business of the relator. The stocks existed within this State, and were kept and held to produce revenue here, and hence in every sense were employed within this State. They took the place, as a portion of the relator's capital, of the patent rights transferred in payment for them. The stocks which the relator took in companies organized outside of this State stood for so much of the relator's capital invested outside of the State. It took a portion of its capital, to-wit, a portion of its patent rights, and employed it outside the State to purchase those stocks. * * Those stocks had no *situs* here, and were not taxable here under any system of taxation which ever existed in this State. To make such capital a basis for taxation it must have been employed within this State. * * It is said in this record, although not distinctly shown, that the relator also held bonds of foreign corporations, issued to it in payment for patent rights granted. We think that so much of the capital as was invested in such bonds was a *basis* of taxation here under the act. Those bonds were presumably held at its office in this State, and such bonds, as well as all choses in action, unless kept, employed or

used outside of the State, have their *situs* at the domicile of the owner. The bonds took the place of the patent rights granted for their purchase. They were kept and held here to earn revenue for the relator, and they were in a proper sense, employed here for that purpose.''

We have thus presented both sides of this controversy, at perhaps greater length than was necessary, but the question is yet in *limine* and may be regarded as opening a new avenue of judicial investigation. If the Comptroller and Treasurer have in reviewing the action of the State Tax Commissioner discharged their duty in accordance with the provisions of the Code, under which they were acting, and we think they have, their action is final, and from it no appeal will lie.

The second contention which we are called upon to consider on this appeal is, whether there is any prohibition in the Constitution of the United States compelling the appellee to make any reduction in the amount of taxes assessed on the *shares* of stock of the appellant by reason of certain patents granted by the Federal Government, and now owned by the appellant. Much that we have already said meets this objection. We fail to see how a State tax upon patent rights *themselves*, would directly or indirectly conflict with the power conferred upon the Federal Government "to promote the progress of science and useful arts, by securing for a limited time to authors and inventors the exclusive right to their respective writings and discoveries." Art. 1, sec. 8 of U. S. Const. The power of Congress (giving effect to this provision) goes no further than to secure to the author or inventor a right of property, which like every other species of property, must be used and enjoyed within each State according to the laws of each State. CH. KENT in *Livingston* v. *Van Ingen*, 9 Johns. (N. Y.) 581. This, we think, correctly announces the rule of construction which ought to be applied to the section of the Constitution just referred to. We entertain no doubt as to its meaning and effect and find the questions raised on

this appeal in no respect in derogation of the Constitution. We find no error in the rulings of the Court below, which we have treated collectively rather than separately, as we have, by so doing, been the better enabled to consider them.

It follows from the views expressed that the judgment of the Court below must be affirmed.

*Judgment affirmed with costs.*

(Decided June 28th, 1898).