BLANK *v.* DUBIN

[No. 434, September Term, 1969.]

*Decided July 9, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Robert S. Sherman* for appellant.

No brief filed on behalf of appellee.

McWilliams, J., delivered the opinion of the Court.

The trial judge, Sodaro, J., gave judgment in favor of the appellant (Blank) against the appellee (Dubin) in the amount of $3,656. Blank is dreadfully unhappy about it. He insists it ought to be more but he does not say how much more. He urges us to set the judgment aside and remand the case so that he can have another go at it. We shall not do so because we think that Judge Sodaro's decision was correct. There was neither brief nor appearance on behalf of Dubin.

Blank says that after he acquired substantially all of the common stock of a Baltimore funeral business he "made numerous large cash advances to the corporation from his personal funds." In "partial satisfaction" of the loans the corporation transferred to him its "chattels, equipment and stock in trade" which he then undertook to sell. In late June or early July 1969 he and his associate, Mrs. Stern, had discussions with Dubin, the owner of Park Avenue Galleries, Inc., looking to the liquidation of the furniture. In his declaration he alleged a *"verbal"* (unwritten) agreement the terms of which he said were as follows:

> "(a) Dubin was to pick up and advertise and sell certain parts of the furniture, equipment and stock in trade, owned by Blank. Dubin was to receive 20% commission on what he sold. The items to be picked up by Dubin, and sold by him, were to be chosen by Blank and Mrs. Stern.
>
> "(b) Blank, through Mrs. Stern, was to place a minimum sale price upon each item chosen to be sold by Dubin, and Dubin was not to sell said item unless that price or more was received from the sale.
>
> "(c) All reasonable expenses incident to the sale were to be itemized and presented to Blank by Dubin for payment by Blank. Certain pieces of furniture, equipment and stock in trade were not to be sold by Dubin at all, at the present

time, and, therefore, were not assigned any dollar value. These items were to be stored by Dubin, until after the items to be sold by Dubin were, in fact, sold by him. At that time, the stored items were to be considered for sale."

Dubin puts its quite differently. On 18 July he submitted to Blank a written proposal for the sale of the furniture which, after three weeks' meditation, Blank rejected. He, in turn, submitted a written proposal to Dubin which was promptly rejected because, Dubin said, the prices Blank wanted were "new" prices, much more than the stuff was worth. Then after some discussion it was agreed that Dubin would "go ahead with a regular sale and get the best prices possible under the circumstances and with that understanding" he started selling it on 4 August. Some weeks later, Dubin continued, "inasmuch as the furniture was moving slowly [sales at that point amounted to about $2,200], they [Blank and Mrs. Stern] came and asked us to move this furniture as fast as possible inasmuch as they were involved in other litigation with the creditors and such, so we immediately contacted dealers directly whom we have done business with before and asked them to come up and look at the merchandise and see if we couldn't sell some of it to them." On 16 August Dubin sold the balance (except two items) to Henry Cohen, the owner of Thieves' Market in Alexandria, Virginia, for $2,500. A few days thereafter Dubin received a telephone call from attorneys representing creditors of the funeral business alleging fraudulent conveyances and other irregularities. This was confirmed by a telegram which concluded with the statement that they would expect him "to account to the receiver to be appointed." Efforts of the parties and their counsel to reach a settlement were abortive; in fact, the record suggests their only meeting for such a purpose ended in a fist fight.

Judge Sodaro found that Dubin's "version of the oral understanding is the correct one as being more reasonable, more acceptable and more convincing." He was the trier of facts; he saw the witnesses; he heard them tes-

tify. Rule 886 a requires us to give "due regard" to his "opportunity * * * to judge * * * [their] credibility." We cannot say his election to believe Dubin was clearly erroneous. *Styka v. Styka,* 257 Md. 464 (1970).

Here we are met, for the first time, with the argument by Blank that the agreement the trial judge found to have been made by the parties is within the Statute of Frauds, Code, Art. 95B, § 2-201 (1964 Repl. Vol.), and therefore unenforceable. It is true, of course, that the agreement was not in writing and that the amount involved was in excess of $500, but it was not "a contract for the sale of goods." We think it is clear that Blank and Dubin were principal and factor rather than buyer and seller. Indeed Blank insists "it is obvious that [Dubin] is a factor by definition." In *McGaw v. Hanway,* 120 Md. 197, 200 (1913), our predecessors said:

> "Ordinarily the distinction between the relation of seller and buyer, and that of principal and factor is plain and simple. In a sale title passes to the buyer, while in a consignment by principal to a factor title remains in the principal, but the possession passes to the factor. Where goods are delivered by one party to another, to sell for the party delivering them, it creates the relation of agency, and the title remains in the principal, and the factor or agent is liable to pay, not a price, but to account for the proceeds of the goods when sold. If, however, it appears from the whole agreement that it is the intention of the parties that the title to the goods is to pass to the party receiving them, for a price to be paid by him, then the transaction is a sale."

A "sale," as defined in § 2-106 (1) of Art. 95B "consists in the passing of title from the seller to the buyer for a price." That the transaction was not within the statute seems to us to be too obvious to merit further discussion.

*Judgment affirmed.*
*Costs to be paid by appellant.*