485 A.2d 254

**The MACKE COMPANY et al.**

v.

**COMPTROLLER OF THE TREASURY.**

No. 24, Sept. Term, 1984.

Court of Appeals of Maryland.

Dec. 26, 1984.

James E. Carbine, Baltimore (Monica L. Newman, Baltimore, on the brief), for appellant.

Linda Koerber Boyd, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

ELDRIDGE, Judge.

The issue before this Court is whether certain paper and plastic products [1] purchased by the Macke Company and Macke Company of Baltimore (Macke) were resold to Macke's customers within the meaning of Maryland Code (1957, 1980 Repl.Vol., 1984 Cum.Supp.), Art. 81, §§ 372(d)(1) and 324(f)(i), thus excluding Macke's purchase of those products from the Maryland Use Tax.

---

[1]. The products involved are paper cups, plates, bowls, hot food cups, napkins, bags, plastic utensils, straws and stirrers. For convenience, we shall hereafter refer to the products involved simply as "paper" products.

The undisputed facts show that Macke purchased certain paper products that were used in its vending and cafeteria business at several institutions, factories and office buildings in Maryland. The paper plates, cups, bowls and lids were used as containers for the food items sold through the vending machines and over the cafeteria lines. The napkins, paper bags, utensils, stirrers and straws were on "condiment tables" in eating areas and were freely available to purchasers of Macke's food items as well as all other persons in the eating areas.[2]

Macke was assessed for the unpaid use taxes on its purchase of these paper products for the period from August 9, 1971, through February 29, 1976. Macke twice requested revision of the tax, but the Comptroller denied both requests. Macke appealed to the Maryland Tax Court, which affirmed the Comptroller's action. The Tax Court found that the transfers of the paper products in cafeteria lines and through vending machines were supported by consideration and therefore constituted sales within the meaning of § 324(d), but that the paper products on the condiment tables were not "sold." For reasons that are not clear to us, however, the Tax Court ruled that, despite consideration being given for some of the products, Macke was not entitled to an exemption for its purchase of any of the products.

The Circuit Court for Baltimore City upheld the Tax Court's decision, and the Court of Special Appeals affirmed

---

**2.** The testimony before the Tax Court was uncontradicted that persons in the cafeteria and lunch room areas bringing food from home, and not purchasing anything through the food lines or vending machines, were able to and did use the napkins, utensils and other assorted products from the condiment tables. Macke's witnesses testified that the non-purchasers of the food were in no way prevented from using these items, that there were no signs suggesting that the items were only for purchasers of food, that the only signs posted requested only that persons not take any more of the items than they intended to use, that the items were in fact used by non-purchasers of food, that Macke's management was aware of this, and that its accounting practices reflected it.

in an unreported opinion. The Court of Special Appeals based its affirmance on the Comptroller's administrative practice of taxing a vendor's purchase of a paper food container if the resold food item was to be consumed on the vendor's premises, but not taxing the vendor's purchase of the paper container if the food item was to be consumed off the vendor's premises.

This Court granted Macke's petition for writ of certiorari. We shall reverse with regard to the assessments for the paper cups, plates, bowls, hot food cups and lids, but affirm the imposition of the tax for Macke's purchase of the paper bags, napkins, utensils, stirrers and straws.

The Use Tax in question, Art. 81, § 373, is imposed upon tangible personal property that is used, stored or consumed within this state. Section 372(d)(1) specifically excludes from the definition of "use, storage or consumption" any tangible personal property that is purchased "for the purpose of resale within the meaning of § 324(f)(i) ...." Section 324(f)(i), which defines "retail sales," excludes from the Retail Sales Tax any tangible personal property which is purchased for the purpose of being resold "in the same form in which the same is, or is to be, received by [the taxpayer]."

The Comptroller argues that this Court should accept the administrative practice followed by the Comptroller since 1947 in taxing these paper food containers and utensils on the basis of whether the food was resold for on-premises or off-premises consumption. The Comptroller maintains that "the construction placed upon a statute by administrative officials soon after its enactment should not be disregarded except for the strongest and most cogent reasons." (Brief, p. 9, citing *Comptroller v. Rockhill, Inc.*, 205 Md. 226, 233, 107 A.2d 93 (1954)). This principle is applicable when statutory language is ambiguous. Nevertheless, the rule is firmly established that when statutory language is clear and unambiguous, administrative constructions, no matter how well entrenched, are not given

weight. As Chief Judge Murphy reiterated for the Court in *St. Dept. of A. & T. v. Greyhound Comp.*, 271 Md. 575, 589, 320 A.2d 40 (1974), "the unvarying construction of a law by the agency charged with its enforcement over a long period of time . . . cannot override the plain meaning of the statute or extend its provisions beyond the clear import of the language employed." *See Comptroller v. A. Cyanamid Co.*, 240 Md. 491, 214 A.2d 596 (1965); *Bouse v. Hutzler*, 180 Md. 682, 26 A.2d 767 (1942). *See especially Comptroller v. John C. Louis Co.*, 285 Md. 527, 543–545, 404 A.2d 1045, 1055–1056 (1979). Furthermore, if the administrative practice is illogical or inconsistent with the statute, it should not be followed. *Ibid.*

In the present case, § 372(d)(1) explicitly excludes from taxation all property bought for resale within the meaning of § 324(f)(i). Section 324(f)(i) excludes from taxation all property that is bought to be resold in the same form in which it is acquired. This Court has already taken the position that § 324(f)(i) is clear and unambiguous, and has held that administrative practice is not to be considered in its application. *Comptroller v. A. Cyanamid Co., supra,* 240 Md. at 498, 504–507, 214 A.2d 596.

Moreover, the Comptroller's administrative practice is clearly in conflict with the plain meaning of § 324(f)(i). Whether a food container is sold with food that will be eaten on the premises or off the premises is irrelevant to whether that item is resold to the ultimate consumer. The Comptroller attempts to justify the on/off premises distinction by analogizing on-premises consumption to the use of china, silver or glassware in restaurants. This comparison ignores the fact that a restaurant patron could not leave with the china, silver or glassware in hand, whereas the purchaser of soup in a paper bowl retains the bowl when finished eating and is entitled to make any use of it that he pleases. The relevant inquiry, disregarded by the Comptroller, is whether consideration is paid, in exchange for title and/or right to possess the item. Art. 81, § 324(d).

As the administrative practice is illogical and inconsistent with the statute, it should not have been given any weight by the Court of Special Appeals. Rather, the decision in this case depends upon whether the clear statutory requirements for the resale exclusion were satisfied.

According to the statutory scheme, all tangible personal property bought for the purpose of resale is expressly excluded from taxation. Art. 81, § 372(d)(1). Tangible personal property is bought for resale if that property is resold in the same form in which it is acquired. Art. 81, § 324(f)(i). The property is resold if its title and/or the right to its possession is transferred to the ultimate consumer in exchange for consideration. Art. 81, § 324(d).

Under the foregoing statutory provisions, the paper bowls, plates, cups and lids are excluded from the tax. The plain meaning of a "sale" is the transfer of title in exchange for consideration. Art. 81, § 324(d); Code (1975), §§ 2–106(1) and 2–401 of the Commercial Law Article; *Comptroller v. John C. Louis Co., supra; Blank v. Dubin,* 258 Md. 678, 267 A.2d 165 (1970); *Sheeskin v. Giant Food, Inc.,* 20 Md.App. 611, 318 A.2d 874 (1974); 1 Squillante and Fonseca, *Williston on Sales,* § 2–2 (4th ed. 1973). In the present case, the ultimate consumer pays Macke for a whole item, which includes both the food and its container. Either component would be relatively valueless to the consumer without the other; thus, the consumer purchases them both as a unit. The consumer understands this. He realizes that after he eats the food, he owns the paper container and may treat it as he pleases. He can throw it away or take it home and plant flowers in it, but he need not return it to Macke. It is wholly unrealistic to state that when vendors sell soup in paper bowls or hamburgers in styrofoam containers, they have sold the edible portions but not the containers or wrappers.

Thus, Macke "sells" the products within the meaning of § 324(d). Further, the products are "resold" to the ulti-

mate consumer in the same form as Macke acquires them, in compliance with § 324(f)(i).

The Comptroller argues that the paper products were not "sold" because no separate consideration was requested or paid for them. But the paper bowl is an integral component of the bowl of soup which Macke sells to its customers. Consequently, there is no reason why a price should be separately stated and paid for the bowl, any more than why each ingredient of the soup should have a separate price. The same is true of the paper cup containing coffee or the paper plate containing hot food. The item is offered and purchased as a whole. The Supreme Court of Pennsylvania addressed this matter in *Paper Products Co. v. City of Pittsburgh*, 391 Pa. 87, 93–94, 137 A.2d 253 (1958):

> "[W]hile no specific charge is made for these containers, wrapping paper and packaging material, (1) they in reality are sold because the dealer in fixing a price for the goods which are contained or wrapped almost invariably includes within his mark-up the cost of the containers, etc.; and (2) it has become an accepted custom of the trade and an almost indispensable necessity for the consummation of a sale. In the practical world of today a purchaser does not go around, as the taxing authorities contend, with a paper bag, a milk pail or bucket or other container in his hand to carry home goods which he buys, since he knows the goods purchased will be delivered to him wrapped or nicely packaged. The ultimate purchaser likewise knows that the dealer is not giving these wrappings, etc., free. The taxing authorities also contend that containers, wrapping paper and the like are a part of a merchant's overhead, the same as light, heat and showcase. We disagree. The ultimate consumer does not acquire title or possession to the light, heat or showcases in a merchant's store, whereas he does acquire both title and possession to the containers, wrapping paper and

packaging material which enclose the product he purchases." [3]

■ In determining whether consideration is given, the appropriate inquiry is whether the paper container adds to the value of the food when sold, in exchange for the total price paid. Clearly the paper bowls, cups and plates increase the saleability and value of the food sold. It is not necessary that this increase be large, or even be determinable with accuracy. In *Moore v. Arizona Box Co.*, 59 Ariz. 262, 268, 126 P.2d 305 (1942), the court explained as follows:

"The point where some of the cases and opinions seem to have gotten away from the logical track is a failure to recognize that the mere fact that, though the *amount* of the value added to the product by the use of the container may be small or may not be determined with even reasonable exactitude either on the basis of per cent. or of dollars and cents, yet if the value is actually added and the salable value of the product increased by the use of the container, it makes no difference that such increase cannot be determined with accuracy. It is obvious in the present case that the container is purchased by the packer only for the purpose of passing on together with the fruit or vegetable; that it cannot be used in any other practical manner, and that without the container the packer's business would be ruined and his product, for all practical intents and purposes so far as resale is con-

---

3. The court in *Paper Products Co.* clearly differentiated between two categories of items. The first category, discussed in the above quotation, included containers and wrappings. The second category consisted of "towels, toilet paper, napkins, cups and the like" which were sold to vendors who used these products "on their own premises, by their own employees, and [which] were not used directly in connection with the products which they sold." 130 A.2d at 221. The purchase of these products by the vendors was held to be taxable, like the purchase of pan liners, towels, plastic bags and other products by Macke for use on its premises by its employees in the course of business, and upon which Macke paid, without dispute, the sales tax. Consequently, contrary to the implication in Chief Judge Murphy's dissenting opinion the purchases by the vendors held to be taxable in the *Paper Products Co.* case were not similar to the purchases by Macke of the paper food containers and lids.

cerned, valueless. Under these circumstances, we think the container was sold by plaintiff for the purpose of resale."

Finally, the overwhelming majority of jurisdictions have rejected the position taken by the Comptroller in this case. *See, e.g., Moore v. Arizona Box Co., supra; Arkansas Beverage Co. v. Heath,* 257 Ark. 991, 521 S.W.2d 835 (1975); *Hervey v. Southern Wooden Box, Inc.,* 253 Ark. 290, 486 S.W.2d 65 (1972); *Goebel Brewing Co. v. Brown,* 306 Mich. 222, 10 N.W.2d 835 (1943); *Burger King, Inc. v. State Tax Comm'r,* 51 N.Y.2d 614, 435 N.Y.S.2d 689, 416 N.E.2d 1024 (1980); *American Molasses Co. of New York v. McGoldrick,* 281 N.Y. 269, 22 N.E.2d 369 (1939); *Kroger Grocery and Baking Co. v. Glander,* 149 Ohio St. 120, 36 Ohio Ops. 471, 77 N.E.2d 921 (1948); *Paper Products Co. v. City of Pittsburgh, supra.* [4] *See also District of Columbia v. Seven-Up Washington,* 214 F.2d 197, 202 (D.C.Cir.1954), *cert. denied,* 347 U.S. 989, 74 S.Ct. 851, 98 L.Ed. 1123 (1954).[5]

The opinion of the Court of Special Appeals did not consider the foregoing cases but instead relied upon a minority view expressed by the Supreme Court of Illinois in *Sta-Ru Corp. v. Mahin,* 64 Ill.2d 330, 1 Ill.Dec. 67, 356 N.E.2d 67 (1976). In that case, under a similar statutory and factual framework, the court determined that paper products were not "resold" because *separate* consideration

---

**4.** *Cf.* Ala.Code, § 40–23–60(4)(c) (1975, 1984 Supp.); Cal.Revenue and Taxation Code § 6364 (West 1970) and Iowa Code Ann. § 432–1(1)(a) (West 1981, 1984 Supp.), which have specific statutory use tax exclusions for containers and/or packaging materials sold together with their contents.

**5.** The dissenting opinion suggests that three of the cited cases, *Seven-Up Washington, Arkansas Beverage Company,* and *Southern Wooden Box,* "actually support the Comptroller's position." This suggestion is inaccurate. The courts in these three cases distinguished between the paper cups and/or cartons used in the sale of soft drinks, which were held to be tax exempt because they were purchased for resale, and the wooden cases and glass bottles, which were deemed taxable. The latter were returnable, and a deposit was paid for them.

was not paid for them, and because the ultimate consumer did not receive "permanent benefit" from the paper product. The court in *Sta-Ru* relied on two cases, one involving meals sold with an airline flight, the other involving paper tissue and towels furnished to hotel guests. In each of these cases, the main item which the consumer received, whether it was transportation or a place to sleep, had value regardless of its being accompanied by a meal or towel. The court in *Sta-Ru,* and the Court of Special Appeals in the present case, failed to recognize that, in contrast to those situations, the food sold to a consumer is relatively valueless if no container for carrying and consuming the food is provided. *See Moore v. Arizona Box Co., supra; American Molasses Co. of New York, supra; Paper Products Co. v. City of Pittsburgh, supra.*

Another reason for excluding these paper containers from taxation is recognized by nearly every case on point: the avoidance of double taxation. *See, e.g., L.A. Frey and Sons v. Lafayette Parish School Board,* 262 So.2d 132, 134, 136 (La.1972); *Burger King, Inc. v. State Tax Comm'r, supra,* 416 N.E.2d at 1028. It is beyond dispute that the purpose of Maryland's resale exclusion is to avoid the "pyramiding" of taxes and to have the tax burden rest on only the final consumer of an item. *Comptroller v. A. Cyanamid Co., supra,* 240 Md. at 494–495, 214 A.2d 596. In the present case, the Comptroller would have Macke pay the use tax on the paper products when purchased, then collect a sales tax on the item when resold, resulting in a tax upon a tax. This is contrary to the intent of the General Assembly.

■ For the foregoing reasons, the Tax Court should have allowed the tax exclusion as to Macke's purchase of the paper plates, cups, bowls, hot food cups and lids. This holding is inapplicable to Macke's purchase of napkins, straws, utensils, stirrers and paper bags, which are kept separate from the items sold and are freely available to non-purchasers of the food items.

JUDGMENTS OF THE COURT OF SPECIAL APPEALS AND THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH FURTHER DIRECTIONS TO REMAND THE CASE TO THE MARYLAND TAX COURT FOR PASSAGE OF AN ORDER CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY.

MURPHY, Chief Judge, dissenting:

I dissent from that part of the majority's holding that the paper plates, cups, bowls, hot food cups and lids (the paper products) are exempt from the use tax imposed by Maryland Code (1957, 1980 Repl.Vol.) Article 81, § 373(a).[1]

The Maryland Use Tax Act, codified as §§ 372–401 of Art. 81, imposes

"[a]n excise tax ... on the use, storage or consumption in this State of tangible personal property ... purchased within or without this State ...." (§ 373(a)).

The phrase "use, storage, or consumption" is defined in § 372(d) to mean

"the exercise by any person within this State of any right or power over tangible personal property, or any keeping or retention in this State for any purpose of tangible personal property purchased either within or without this State. This term does not include the following:

(1) The purchase of tangible personal property by any vendor, or the keeping or retention of possession in this

---

1. The Maryland Use Tax Act is complementary to the Retail Sales Tax Act, codified as Article 81, §§ 324–371, in that the former applies only to those transactions subject to sales tax, but on which no tax has been paid. Article 81, § 375(a) and (b). *See also Comptroller v. Glenn L. Martin Co.,* 216 Md. 235, 140 A.2d 288 (1958), *cert. denied,* 358 U.S. 820, 79 S.Ct. 34, 3 L.Ed.2d 62 (1958); *Comp. of Treas. v. Thompson Tr. Corp.,* 209 Md. 490, 121 A.2d 850 (1956); *Compt. of Treasury v. Crofton Co.,* 198 Md. 398, 84 A.2d 86 (1951).

State of tangible personal property, *for the purpose of resale within the meaning of § 324(f)(i) of this article."* (Emphasis supplied.)

Section 324(f)(i) provides:

" *'Retail sale'* and *'sale at retail'* means the sale in any quantity or quantities of any tangible personal property or service taxable under the terms of this subtitle. *The term shall mean all sales of tangible personal property to any person for any purpose other than those in which the purpose of the purchaser is (i) to resell the property so transferred in the form in which the same is, or is to be, received by him."* (Emphasis supplied.)

The terms "sale" and "selling" are defined in § 324(d) as "any transaction whereby title or possession, or both, of tangible personal property is or is to be transferred by any means whatsoever for a consideration ... by a vendor to a purchaser ...."

In claiming exemption from use tax on its purchases of the paper products, Macke contended that the purchases qualified for the resale exclusion because the ultimate transaction constituted a "sale" within the meaning of § 324(d), i.e., title or possession was transferred to the consumer for a consideration. Macke argued that title and possession of all such products were ultimately transferred to its customers for consideration as a separate cost for the paper products was factored into the total cost of each food item. Macke maintained that any other standard or requirement necessary for qualification as a purchase for "resale" was irrelevant because the terms of the statute were clear and unambiguous, thus precluding any need to resort to other interpretive aids.

The Tax Court affirmed the Comptroller's assessment, concluding that Macke's purchase of paper products did not qualify for resale exclusion under § 324(f), despite its finding that some of the transfers, i.e., the paper containers but not the condiment table items, constituted a "sale" within

the meaning of § 324(d). In denying the resale exclusion, the Tax Court reasoned that Macke's purchase of paper products was "induced by the Taxpayer's desire to facilitate sales of other items, and thus are normal overhead expenses."

Macke appealed to the Circuit Court for Baltimore City. That court expressed the view that the transfers of the paper products at issue to the customer for on the premises use were not supported by valid consideration, and thus failed to meet the definitional requirement of a "sale" under § 324(d). The court reasoned that

> "[s]uch paper and plastic products offered to consumers as an item of convenience were not inseparably connected to the food and beverages sold by Appellants to constitute a resale of such products. Such paper and plastic products did not become physical component parts of the food and drink which were sold to Macke customers. The aforementioned paper and plastic products are not supported by bargained-for consideration and as such are normal overhead expenses."

In affirming the Maryland Tax Court, the circuit court concluded:

> "The absence of any consideration received by Appellants in exchange for the transfer of the paper products to the consumers of the food and drink products precludes the occurrence of a sale of such retail property. Substantial evidence exists in the record to support the factual findings of the Maryland Tax Court that the paper products purchased by Appellants for use in their business do not qualify for the purchase for resale use tax exclusion provided by § 324(f)."

Macke appealed to the Court of Special Appeals, which affirmed the assessment in an unreported opinion. Attributing great weight to the long standing administrative construction of the relevant tax provisions, that court held that Macke's primary purpose in using paper products for

on the premises use by its customers was for its own convenience and not for the purpose of resale. It said:

"Macke uses paper products, presumably for sanitary purposes and to avoid the cost of washing the containers.... From the customer's point of view, it matters not what type of container the food is served in; he is buying food, not paper containers that are of no value except for the initial convenience in transferring the food to the customer. The fact that the provider, Macke, may include the cost of the container in setting the price of the food does not require a different conclusion. Macke is engaged in the business of selling food and beverages, not disposable containers."

The Court of Special Appeals also held that the transfers of the paper products were not supported by consideration.

Shortly after the enactment in 1947 of the sales and use tax acts, the Comptroller—who was authorized by § 334 to make rules and regulations in connection with the imposition and collection of the tax—interpreted the governing statutes to mean that paper products like those here involved, purchased by a retail vendor serving food and drink for on the premises consumption, were not entitled to the resale exclusion from tax provided in § 324(f)(i). This interpretation was subsequently published and reissued without change in at least four official bulletins in 1954, 1963, 1965 and 1970; it has remained unchanged for thirty-four years. The Comptroller's position appears premised on the rationale that the paper products are purchased by the vendor solely to facilitate the retail sale of food for consumption on the premises in the same manner as china and silver eating utensils facilitate the serving of food at other restaurants and thus are not acquired for the purpose of resale.

It is elementary that the unvarying construction placed upon a statute of uncertain application by administrative officials charged with its enforcement soon after its enactment, and over a long period of time, should not be disregarded except for the strongest and most cogent reasons. *See St. Dept. of A. & T. v. Greyhound Comp.*, 271 Md. 575,

320 A.2d 40 (1974); *Comptroller v. Rockhill, Inc.*, 205 Md. 226, 107 A.2d 93 (1954). I think that rule is applicable in this case and, accordingly, the Comptroller's construction is entitled to great weight. *See Comptroller v. Joseph F. Hughes*, 209 Md. 141, 120 A.2d 343 (1956).[2]

The validity of the Comptroller's administrative interpretation is supported by the preamble to ch. 3 of the Acts of 1957, which explicitly stated that a purchase of personal property must be *solely* for the purpose of resale to qualify for the resale exclusion from tax. That enactment, in amending the sales and use tax acts, specified in its preamble:

"WHEREAS, it is and has always been the intent of the General Assembly of Maryland that the definition of 'Retail Sale' and 'Sale at Retail' should include all sales, except sales in which the *sole* purpose of the purchaser is to resell the tangible personal property or services which he purchases either in the form in which the same is received by him; or to use or incorporate the property as a material or part of other tangible personal property, to be produced for sale, by manufacturing, assembling, processing or refining; and

"WHEREAS, it is and always has been the intent of the General Assembly of Maryland that the definition of 'Use' in the Maryland Use Tax should exclude only such property or service which is held *solely* for resale in the regular course of business or which is to be incorporated as a material or part of other tangible personal property to be produced for sale by manufacturing, assembling, processing or refining; and

---

**2.** Inapplicable in this case is the rule that an administrative interpretation contrary to the clear and unambiguous meaning of a statute will in no event be given effect by the courts. *See Atlantic, Gulf v. Dep't of Assess. & T.*, 252 Md. 173, 249 A.2d 180 (1969); *Bouse v. Hutzler*, 180 Md. 682, 26 A.2d 767 (1942). While the words of § 324(f)(i) and 372(d) giving rise to the resale exclusion are themselves clear, the extent of their operative application is by no means free of doubt.

"WHEREAS, the uniform administrative interpretation and enforcement by the Comptroller of the Treasury since the inception of the Retail Sales Tax Act and the Maryland Use Tax has been in conformity with the provisions of this act." (Emphasis supplied.)

The 1957 Act was enacted to nullify the effect of two earlier decisions of this Court, *Balto. Foundry v. Comptroller,* 211 Md. 316, 217 A.2d 368 (1956) and *Comptroller v. Aerial Products,* 210 Md. 627, 124 A.2d 805 (1955). *See Washington Nat'l Arena v. Pr. Geo's Co.,* 287 Md. 38, 53, 410 A.2d 1060, *cert. denied,* 449 U.S. 834, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980). The *Baltimore Foundry* and *Aerial Products* cases excluded from taxation tangible personal property, such as tools and other equipment, which, although used by the purchaser, was ultimately transferred to another. These cases stood for the proposition that "the purpose of the purchaser to resell the property need not be his sole purpose in making the purchase in order to make the exclusion operative." *Comptroller v. Glenn L. Martin Co.,* 216 Md. 235, 243, 140 A.2d 288, *cert. denied,* 358 U.S. 820, 79 S.Ct. 34, 3 L.Ed.2d 62 (1958). Readily ascertainable from the preamble to the 1957 Act is the legislative intention to confirm the Comptroller's administrative construction that the resale exclusion from tax is available *only* if the purchase was made *solely* for the purpose of resale.[3]

The record discloses that Macke did not separately charge its customers for the paper products here involved. I think it apparent that Macke supplied such products to facilitate the serving of food and drink to its customers which constituted a use inuring to Macke's benefit in the conduct of its operations. It did not acquire the paper products for the

---

3. That the legislative recitals set forth in a preamble to an enactment may be resorted to as an aid in the interpretation of a statute is well settled. *See McAlear v. McAlear,* 298 Md. 320, 469 A.2d 1256 (1984); *Dillon v. State,* 277 Md. 571, 357 A.2d 360 (1976); *National Can Corp. v. Tax Comm.,* 220 Md. 418, 153 A.2d 287 (1959), *appeal dismissed,* 361 U.S. 534, 80 S.Ct. 586, 4 L.Ed.2d 538 (1960).

sole and only purpose of reselling them to its customers within the contemplation of § 324(f)(i) and § 372(d)(1).

The precise question in *Sta-Ru Corp. v. Mahin*, 64 Ill.2d 330, 1 Ill.Dec. 67, 356 N.E.2d 67 (1976) was whether purchases by a retail food vendor of paper and plastic containers used to contain food and beverages consumed by its customers on the premises were entitled to the resale exclusion from tax as having been acquired "for the purpose of resale." *Id.*, 1 Ill.Dec. at 67–68, 356 N.E.2d at 67–68. The contentions of the parties were similar to those raised in the present case. In concluding that the purchases were not made for the purpose of resale, the Illinois Supreme Court said:

"No separate charge is made by Sta-Ru for the disposable containers furnished its customers. Obviously, Sta-Ru is in the business of selling food and beverages, not disposable containers, and it is the food or beverage which its customers come to purchase.... Sta Ru provides the plastic and paper containers as a part of its standard method of doing business. There is no resale of the containers to the customers within the meaning of the ROTA. Rather, the cost of the containers used to serve food on its premises is a cost of doing business as would be the cost of permanent dinnerware.

"Sta-Ru's contention that the containers are resold since their ownership is transferred to the customer with no right in Sta-Ru to reclaim possession is hardly convincing. Beyond the fact that no separate consideration is paid for the containers, it is conceded that the containers are not reusable. The customer acquires nothing of permanent benefit. The containers are consumed or used by Sta-Ru in a business sense when it serves the food or beverage." *Id.*, 1 Ill.Dec. at 70, 356 N.E.2d at 70.

The majority's characterization of *Sta-Ru Corp.* as a minority view is simply wrong. So is the Court's holding that "the overwhelming majority of jurisdictions have rejected the position taken by the Comptroller in this case." Except for *Burger King, Inc. v. State Tax Comm'r*, 51

N.Y.2d 614, 435 N.Y.S.2d 689, 416 N.E.2d 1024 (1980), the cases cited by the court are distinguishable from the present case and from *Sta-Ru Corp.*[4] In fact, they are consistent with the Comptroller's administrative interpretation of the statute. In general, these cases held that shipping containers, cardboard cartons, paper cups used in vending machines, wooden cases and other wrapping or packaging materials purchased by grocery producers, beverage manufacturers, grocers, and sugar refiners were items sold for "resale" and thus were not taxable. These holdings are entirely consistent with the Comptroller's administrative regulation, COMAR 03.06.01.42, which excludes from use tax containers, shipping cartons, bottles, boxes, excelsiors, bale binding, etc. if they "[are] purchased for resale with other tangible personal property sold by the purchaser." Under this administrative regulation, paper products used in connection with take-out or off-premises consumption qualify for tax exclusion whereas the purchase of paper products used for Macke's on-premises food operations does not qualify for use tax exclusion.

Several of the cases relied upon by the majority, as I read them, actually support the Comptroller's position in this case. *District of Columbia v. Seven-Up Washington,* 214 F.2d 197 (D.C.Cir.), *cert. denied,* 347 U.S. 989, 74 S.Ct. 851, 98 L.Ed.2d 1123 (1954) held that returnable, reusable soda bottles were taxable since the bottles were used by the beverage companies and because the companies were "not in the business of selling bottles or cases but of using them as a means of marketing their soft drinks." *Id.* at 200. *Arkansas Beverage Company v. Heath,* 257 Ark. 991, 521

---

**4.** *Burger King* involved paper products used to package food, such as hamburger wrappers, beverage cups and french fry sleeves, in a fast-food facility. The New York Court of Appeals held that these products qualified for resale exclusion under a provision similar to that now before us. In so holding, the court emphasized the nature of Burger King as a fast-food restaurant chain, where the "key" to the operation is speed, sanitation and portability. It found the packaging in these circumstances to be "a critical element of the final product sold to customers." 435 N.Y.S.2d 618, 416 N.E.2d at 1028.

S.W.2d 835 (1975) is to the same effect. In *Paper Products Company v. City of Pittsburgh,* 391 Pa. 37, 130 A.2d 219 (1957), the paper napkins, and other items sold to dealers or vendors, were held to constitute retail sales since such products were "used by the purchasers" just as paper products are "used" by Macke for its on-premises food services.

And in *Hervey v. Southern Wooden Box, Inc.,* 253 Ark. 290, 486 S.W.2d 65 (1972), the Supreme Court of Arkansas held the Coca Cola Company, a seller of carbonated drinks, to be liable for use tax upon its purchases of wooden cases since the company failed to meet its burden of proving that the returnable wooden cases were for resale. Here, the court stated

> "We hold that Coca Cola must prove that it buys the wooden cases for the purpose of reselling them. We do not interpret the broad statutory definition of a sale to include every transaction in which there is a transfer of possession, for a consideration.... The statute must be read as a whole. If the reference to a transfer of possession were applied literally in every instance, absurd results would follow." *Id.,* 486 S.W.2d, at 68.

Giving due consideration to the Comptroller's longstanding administrative construction, the statutory provisions and the decided cases, I conclude that the legislature did not intend to extend the resale exclusion to the paper products involved in this case, as they were not acquired by Macke for the sole purpose of reselling them to its customers within the contemplation of §§ 324(f)(i) and 372(d)(1). This is so without regard to whether Macke factored the cost of its paper products into the price exacted from the customer for the food and beverages. No separate consideration having been paid by the customer for Macke's paper products, there is, moreover, an absence of consideration for the transfer, as found by the courts below.

In concluding that the assessment was proper in this case, I take no issue with the majority's general view concerning the avoidance of double taxation. The short

answer, as I see it, is that no unlawful pyramiding of taxes is here involved, since we are dealing with two distinct and separate taxable events imposed upon different consumers—it is not a taxing twice for the same purpose. As we said in *Wilkens Co. v. Baltimore City*, 103 Md. 293, 312, 63 A. 562 (1906), citing *U.S. Elec. P'w'r & L'g't Co. v. State*, 79 Md. 63, 71–72, 28 A. 768 (1894):

> " '[W]hen the same property represents distinct values belonging to different persons, be those persons natural or artificial, both persons may be lawfully taxed, and the amounts of their separate contributions would be fixed by values which the same property represented in the hands of each respectively. And this would not be double taxation in the sense in which it is obnoxious to the organic law.' "

*See also Crown Cork & Seal Co. v. State*, 87 Md. 687, 40 A. 1074 (1898), *app. dismissed*, 20 S.Ct. 1026, 44 L.Ed. 1220–21 (1900); *U.S. Elec. P'w'r & L'g't Co. v. State, supra.*

I am authorized to state that Judge MORTON concurs in the views herein expressed.