In the Matter of AMERICAN MOLASSES Co. OF NEW YORK, Appellant and Respondent, against JOSEPH D. McGOLDRICK, as Comptroller of the City of New York, Respondent and Appellant.

STERLING BAG COMPANY, INC., Respondent, *v.* CITY OF NEW YORK et al., Appellants.

Argued May 26, 1939; decided July 11, 1939.

*Morton L. Deitch, Sol M. Stroock* and *Milton Socoloff* for petitioner, appellant and respondent in proceeding.

*William C. Chanler, Corporation Counsel (Arthur A. Segall, Sol Charles Levine* and *Morris L. Heath* of counsel), for defendant, respondent and appellant in proceeding.

*William C. Chanler*, *Corporation Counsel* (*Arthur A. Segall*, *Sol Charles Levine* and *Bernard H. Sherris* of counsel), for appellants in action.

*William L. Hanaway*, *William J. Quinn* and *Charles A. Howard*, *Jr.*, for respondent in action.

LEHMAN, J.  The question involved in these appeals is simple.  The New York City Sales Tax (Local Law No. 20 [published as No. 21] of 1934, as amended) imposes a tax, with exceptions not here material, upon receipts from every sale in the city of New York of " tangible personal property sold *at retail*."  The statute provides that " a ' retail sale ' or ' sale at retail ' means a sale to a customer, or to any person

for any purpose other than for resale in the form of tangible personal property." Sugar and molasses sold at wholesale must be packed in containers. The packers must purchase the containers. They sell the sugar and molasses in the containers and title to the containers passes to the purchasers in bulk. The purchasers may use the contents in their own business or may parcel it out in small quantities to customers for home consumption. Then the container does not reach the ultimate consumer but is retained by the purchaser in bulk and usually resold as junk. The question here presented is whether the original sale of the container to the refiner or packer of sugar or molasses constitutes a " sale at retail " within the meaning of the statute.

There can be no doubt that the sale is made for the purpose of enabling the refiner or packer to put the sugar or molasses in the container and to sell the sugar and molasses *with the container*. The title to the container is transferred as well as title to the sugar or molasses. We may assume that the buyer of the contents acquires title to the container only because he cannot otherwise obtain title to the contents and that, when he removes the contents, he has no further use for the container. We may assume, too, that the refiner or packer of the sugar or molasses bought the containers only to facilitate the sale of the product packed in the container and not for the purpose of a resale of the container as an article of commerce. The resale of the container is purely an incident of the sale of the contents. Nevertheless, the container and contents are not inseparably connected. The container has not been consumed by the refiner or packer in performing services for another as was the case in *Matter of Mendoza F. D. Works, Inc.,* v. *Taylor* (272 N. Y. 275). The container remains " tangible personal property " after it has been filled by the refiner or packer and resold as an incident of the sale of the contents; it may be resold as tangible personal property by the purchaser of the contents who has no use for an empty container after the contents have been removed.

The original sale to the refiner or packer was made for resale in the form of tangible property. Though such resale was purely an incident to the sale of the contents, and the original purchase would not have been made except for the purpose of reselling the container as such an incident to the sale of the contents; nevertheless the sale to the refiner was not a sale at retail within the letter or spirit of the law.

In the first above-entitled proceeding the order should be affirmed, without costs.

In the second above-entitled action the judgment should be affirmed, with costs.

CRANE, Ch. J. (dissenting in *Sterling Bag Company* v. *McGoldrick*). Sugar refiners sell sugar. It cannot be delivered to customers like coal, shoveled into bins; it must be contained in some receptacle like a box or a bag. This part of the business is a necessary part. The refiner cannot say to the customer, " here is your sugar, come and get it; it is no business of mine how you carry it away." There would be few sales if such were the case. Trade would go to the refiner who properly packed or boxed it, made it convenient for delivery and for handling. The refiners, therefore, use bags; they buy bags in the market which become as much a part of the refiners' sale of sugar as the sugar itself, part of the output. The refiner is not in the business of selling bags; he sells sugar; and to sell it he needs bags as much as he needs men and machinery to refine the sugar, and salesmen to get trade.

No one would ever think that the refiners, in disposing of their product, were selling bags, no matter what the price or how much the price varied. Now that there is a city tax on sales the claim is put forth that the refiners are merchants of bags.

The Sterling Bag Company, Inc., as its name implies, is a manufacturer of burlap and cotton bags, having its principal office in the borough of Brooklyn, New York city. The sales here involved are sales of sugar bags to refiners of sugar for delivery in New York city. It is in no way

affiliated with these refiners. The bags sold are of three general types, (1) bulk sugar bags of 100-pound capacity; (2) burlap " sacks " or " envelopes " generally of 100-pound capacity, designed as containers for smaller cotton bags filled with sugar; and (3) smaller cotton bags of two-, five-, ten-, fifteen- and twenty-five-pound capacity with which the " sacks " or " envelopes " are filled. The company solicits orders from the sugar refiners and upon receiving an order prints the cloth with the particular refiner's name or other designation according to instructions, manufactures the bags and delivers them to refiners. The bags have the refiner's name branded on them. Invoices are forwarded to the refiners and payment is received by the plaintiff in due course. The sugar in one-hundred pound bulk bags is sold to manufacturers who use sugar in large quantities, such as confectioners, bakers or food canners, and the sugar packed in cotton bags inserted in the sacks is sold to jobbers, wholesalers or chain stores in the retail trade.

This appeal involves only the taxability of the sales of the larger containers of one-hundred pound capacity for sugar or the burlap " sacks " or " envelopes " generally of the same capacity to hold the smaller cotton bags filled with sugar. These facts place these wrappings of sugar in the same class with wrapping paper, wooden or cardboard boxes. The goods must be placed in something to be sold, some kind of container; for sugar, coarse bags; for fruit, wooden or tin boxes; for oil, barrels, etc., according to the nature of the article. The refiners buy bags, but they do not deal in bags, nor is it accurate to say that they sell bags. Of course the bags go along with the sugar — it cannot of necessity be otherwise — but to say that the purchaser of sugar is buying bags or intends to buy bags except as they contain his purchase of sugar is a refined and strained construction adopted only for tax purposes; it is not the natural meaning or one which merchants or the trade recognize, nor is it true to fact. The bags, it is said, after the sugar is taken out can be sold in the second-hand market. So can old barrels or wrapping paper.

This, too, has an artificial sound. The disposition of waste bags or paper is not such a resale as is contemplated by the local law.

The Sales Tax Law is Local Law No. 20 (published as No. 21) of 1934, section 2 (as amd. Local Law No. 24 [published as No. 25] of 1934), applicable only to New York city. "There shall be paid a tax of two per centum upon the amount of the receipts from every sale in the city of New York of: (a) Tangible personal property sold at retail, except those articles described in Schedule ' A ' * * *." Bags or containers are not in the excepted list. A " sale " is " any transfer of title or possession or both * * * for a consideration." The word " receipt " means " the amount of the sale price." A " retail sale " or " sale at retail " means " a sale to a customer, or to any person for any purpose other than for resale in the form of tangible personal property."

The local law also provides:

" § 2. * * * For the purpose of the proper administration of this local law and to prevent evasion of the tax hereby imposed, it shall be presumed that all receipts for property and services mentioned in this section are subject to the tax until the contrary is established, and the burden of proving that a receipt is not taxable hereunder shall be upon the vendor or the purchaser, unless the vendor shall have taken from the purchaser a certificate signed by and bearing the name and address of the purchaser * * * to the effect that the property or service was purchased for resale."

The local law provides that a sale at retail is a sale " for any purpose " other than a resale. The refiner buys the bags for the purpose of shipping or transporting sugar to its customers. This use or purpose, while passing title to the bags to the customer with the delivery of the sugar, is not such a resale as here defined. This use is a " purpose " other than a resale of bags as bags.

That the parties here involved understood that this was a retail sale of bags to enable the purchasing refiners to

pack sugar and not to resell the bags as such is evident from the fact that the bag company failed to obtain any resale certificates or the refiners (who ultimately pay the tax) to offer them. One who is exempt in carrying on an extensive business seldom forgets the exemption. Then again the refiners sold their sugar at scheduled prices without claiming or stating any separate rate for containers. The purchaser of the sugar could never tell what he was paying for bags; he did not expect to, as he was buying sugar, not bags.

I am of the opinion that these sales of sugar bags came within this tax law and that the courts below were in error in holding that the refiners intended to resell the *bags* as bags.

The respondent claims and the evidence shows that the price of sugar varied. The manager of the production division of the American Sugar Refining Company explained how the price of sugar was determined; what elements had to be considered. " Q. In determining the base price, which you have told us about, and which you have described, as 100 pounds of fine granulated sugar in a bag, what are the factors which go to make up that base price? A. The cost of refining, the fuel, labor and repairs. Q. And the cost of the bag? A. And the cost of the bag, and the cost of packing the bag." It is thus a mistake to say that the increase in price is dependent solely on the size or style of bag or container. The cost of labor in packing the bag — larger in size — is also an element which is included. The variance from the base price fluctuates for various reasons and even the respondent cannot and does not say that the cost of the bag is represented by (not in) the increased price of the sugar. The fact is that the cost of bags is of course taken into account in fixing the price of sugar, the same as the cost of refining, fuel, labor, repairs, packing and all other expenses incurred in placing refined sugar on the market. The item of profit is also included. Merely because the necessary container passes along with the sugar does not constitute a resale of the container within this local law. Neither does the question of book-

keeping aid us here. Whether the cost of bags was charged to overhead or in some other manner is immaterial. Overhead expenses, all expenses must figure somewhere in the price of manufacturer's output or he will soon go bankrupt. The ease with which goods can be handled, delivered and again passed on in trade is as important as advertising if inducement is considered in the sugar trade. The cases of *City Paper Co.* v. *Long* (235 Ala. 652) and *Warren* v. *Fink* (146 Kan. 716) have taken this view under similar laws. We have not overlooked *McCarroll* v. *Scott Paper Box Co.* (195 Ark. 1105), but cannot reach the same conclusion as applied to the facts of this case.

The vice-president and treasurer of the plaintiff testified that in his opinion the business of the company had fallen off because refiners were purchasing bags out of the State to escape the tax. " Q. In your opinion has the adoption of the New York City sales tax anything to do with the refusal of the sugar refiners to accept deliveries from your Company in New York City? A. I think it has a great deal to do with it. It is obviously responsible for our decline in local deliveries," etc. And the manager of the production division of the American Sugar Refining Company said, " We have ceased largely our purchases of bags in New York City, from all bag manufacturers. Q. In your opinion has the passage or the adoption of the New York City sales tax anything to do with your discontinuing the purchase of bags for New York City delivery? A. Yes."

This is unfortunate, but I cannot see what bearing it has upon the meaning of the local law. That the effect is to drive business out of the city to the loss of manufacturers located there is a matter for legislative consideration but not for the court which applies the law.

This action for a declaratory judgment was an appropriate remedy. After the motion to dismiss upon the pleadings had been denied the case was tried out at Special Term where the allegations of the complaint were given in detail with appropriate explanations. This at least was more satisfactory than relying on pleas and conclusions. How-

ever, the evidence not being contradicted and the facts clearly appearing, a judgment as to the relative rights of the parties could easily be given. (*German Masonic Temple Association* v. *City of New York*, 279 N. Y. 452.)

The judgment should be reversed and case remitted to the Special Term for such judgment as may be appropriate in the light of this opinion, with costs to appellants in all courts.

CRANE, Ch. J. (dissenting in *Matter of American Molasses Company* v. *McGoldrick*). The principles underlying this case have been fully expressed in the companion case of *Sterling Bag Co., Inc.*, v. *City of New York*, decided herewith. The only differences are, *first*, drums and barrels are used as containers for molasses and syrup; *second*, some of the containers are purchased out of the State.

At the outset we are not concerned with the regulations of the Comptroller as we are solely guided by the meaning and purpose of the local tax law.

The American Molasses Co. of New York is engaged in the business of packing and selling syrup and molasses in New York city. It has its offices in Manhattan and its factory in Brooklyn. The product is packed in various types and sizes of containers which for this case consist of six-, eleven- and sixteen-gallon steel pails, fifty-five-gallon steel drums and fifty-seven-gallon wooden barrels. Only one per cent of the one-gallon cans are also included. Of the six-, eleven- and sixteen-gallon pails thirty per cent are sold to bakers and confectioners who use the contents in the manufacture of pastry, cake, candy and similar products, and seventy per cent are sold to dealers and distributors, persons who in turn resell the molasses in the original container. About fifty per cent of this latter portion is resold to bakers and confectioners and the remaining portion is sold by the wholesalers to retailers who dispense the product to housewives in smaller quantities. Of the fifty-five-gallon metal drums, which are used only for syrup, virtually all are ultimately sold to manufacturing bakers and confectioners. Of the fifty-seven-gallon wooden barrels used

for both syrup and molasses about fifty per cent are disposed of directly to bakers and confectioners who use the contents in their business, and about fifty per cent are sold to distributors, who in turn resell. Of this fifty per cent approximately one-half is parceled out in small containers by retailers for home consumption. The containers are not returned to the company, but when emptied can be disposed of in a second-hand market.

These various kinds of containers have from experience proved to be the most suitable for the business. The evidence shows that the customers for molasses or syrup are not billed for these containers and that the molasses company is not in the barrel, pail or steel drum business. The product sold is molasses or syrup, which has to be put into something, and a barrel or a pail is the most convenient according to quantity. That the customer does not purchase the container is evidenced by the fact that when empty he sells it for junk. Naturally, the cost of the container enters into the price, the larger the container the larger the price. Steel drums cost more than wooden barrels, etc. All that has been said about the sugar bags in the other case applies here, and these purchases by the molasses company are subject to the sales tax according to Local Law No. 20 there quoted.

The petitioner's illustration regarding the parts of an automobile is not very apt. True, a tire may be purchased here, the wheels there and the upholstery at yet a different place, and, questions the petitioner, would we tax the sale of these parts? The answer is no, for the simple reason that they are put together and resold as one manufactured article — the automobile — they *are* the automobile just as the hand and foot and head and neck are the person, as distinguished from his clothes. The wrappings or the clothes in which the molasses makes its appearance in public is not the molasses.

The other question, however, presents a point not in the bag company case. We have held in *Matter of National Cash Register Co.* v. *Taylor* (276 N. Y. 208); *Matter of*

*West Publishing Co.* v. *Taylor* (276 N. Y. 535); *Matter of Compagnie Generale Transatlantique* v. *McGoldrick* (279 N. Y. 192), that a certain class of sales were not taxable either because the contract of sale was not made in New York city or that it would be a burden on interstate commerce. The purchase of containers from Wheeling Corrugating Company, Pittsburgh Steel Drum Company and the National Steel Drum Company falls within the reasoning of these authorities. They were for articles to be manufactured and shipped from without the State and in some instances the contracts were approved at the place of manufacture. So, too, regarding the purchase of coal from the mines in Pennsylvania through the Logan Coal Company. Such items of purchase, whether containers or coal, as fall within this category, are not within the law, and the price is not subject to the two per cent tax.

The order of the Special Term and of the Appellate Division should be modified to this extent and the matter remitted to Special Term for judgment in accordance with this opinion. Except as modified, the orders should be affirmed, without costs.

HUBBS, LOUGHRAN and RIPPEY, JJ., concur with LEHMAN, J.; CRANE, Ch. J., dissents in separate opinion in each case, in which opinions FINCH, J., concurs; O'BRIEN, J., taking no part.

Order and judgment affirmed.