In the Matter of COLGATE-PALMOLIVE-PEET COMPANY, Petitioner, against LAZARUS JOSEPH, as Comptroller of the City of New York, Respondent.

First Department, November 24, 1953.

*Sol Charles Levine* of counsel (*Joseph M. Godman* with him on the brief; *S. C. Levine* and *S. H. Levine,* attorneys), for petitioner.

*Leroy Mandle* of counsel (*Stanley Buchsbaum* and *Seymour B. Quel* with him on the brief; *Denis M. Hurley, Corporation Counsel,* attorney), for respondent.

BREITEL, J.  In this article 78 (Civ. Prac. Act) proceeding petitioner, Colgate-Palmolive-Peet Company, seeks to annul a determination of the city comptroller assessing it for a tax deficiency. The City of New York claims a sales tax (Administrative Code, ch. 41, tit. N) from the company covering paperboard cartons in which the company shipped its soap and toilet products to retail druggists and grocers.  The city claims that the company, as vendor, should have collected the retail sales tax from its customers on the theory that the shipping cartons were sold to the retailers for consumption.  The company claims that it was right in not collecting the tax from its customers because it sold to them shipping cartons for resale and not for consumption.

We hold that the claims of neither are correct, and that the company itself is the consumer of its shipping cartons.  On this view the company may owe the retail sales tax to the city.  If it does, it owes it not as a collecting vendor but as a vendee who has failed to pay the tax because the sellers of the cartons failed to collect the tax from the company (Administrative Code, § N41-2.0, subd. f).  This would require a new and separate proceeding by the city.

The company manufactures and sells to retailers soaps and toilet articles.  The retailers, who are principally the operators of drug and grocery stores, in turn sell these products at retail to the public.  The company's products are shipped in paperboard cartons.  The cartons are either destroyed by the retailer, sold as waste paper, resold as usable cartons, or are used by the retailers, particularly grocers, to package loosely the merchandise purchased by the retail consumer.  There was evidence that the cartons can be skillfully opened so that their re-use for the same shipping purpose is not impaired, except for outside labelling.  There was no proof that this method of opening the cartons was in general use.  There was evidence of the resale

of these cartons to both waste paper dealers and to dealers in used cartons. There was no evidence as to how extensively such resale occurred in the city. It is conceded that the price of the products manufactured by the company reflects the cost of shipping cartons, but that the cost is no more identifiable in the price than any other overhead cost of doing business.

The city claims that the company sells the cartons as well as the contents to its retailer customers. It claims that the cartons have no persistent usefulness after shipment or in general resale by the retailers except as incidental to the disposal of waste. The company claims that the cartons are not destroyed except occasionally by its customers. It claims that they are resold either to dealers in cartons or that they are sold to the customers at retail, who purchase sundry articles from the retailer and have them delivered in the old broken cartons.

It would seem that the reasonable description of the use of the shipping cartons is that the cartons are consumed by the company in the shipment of its products to its retailer customers. There is no particular interest in the character, type or value of the cartons except as temporary, and not very durable, containers in the shipment of merchandise sold. Whatever proof there was or is as to re-use or resale of the cartons is obviously incidental to sale, salvage and disposal of waste. It is hardly likely that any other view would have been tendered by either the company or the city except for the fact that certain decisions respecting the retail sales tax have been misapplied by them. These cases, to which we will refer in greater detail, involved shipping materials of substantially different character than paperboard cartons. Moreover, in some of the cases there was a visible price differential charged depending upon the kind of shipping carton requested by the purchaser of the contents. In one of the cases, although there was no price differential, the shipping carton was of a physically substantial character. Its cost was not inconsiderable and there was a widespread regular market for its resale and re-use. To apply these cases to the facts at hand is to ignore realities and to convert a verbalism into a philosophy. The law is not a joust with word symbols, and the use of language never can excuse us from the necessity of searching for the ideas and concepts language purports to communicate.

The cases referred to in the discussion immediately preceding are: *Sterling Bag Co.* v. *City of New York* (256 App. Div. 645, affd. 281 N. Y. 269); *Matter of American Molasses Co.* v.

*McGoldrick* (256 App. Div. 649, affd. 281 N. Y. 269), and *Matter of Wood Packing Box Co.* v. *McGoldrick* (262 App. Div. 720, affd. 286 N. Y. 665).

In the *Sterling Bag Co.* and the *American Molasses Co.* cases it was held that the shipping cartons were sold for resale even though the sale occurred incidentally to the sale and shipments of the contents. In both cases differential prices were charged depending upon the size and kind of shipping container requested by the purchaser. The differential in price and the conscious selection by the customer are most significant factors. Involved in the *Sterling Bag Co.* case were large sugar bags of different sizes. No tax was claimed on the smaller bags. In the *American Molasses* case there were involved containers ranging from one pint metal cans to fifty-five gallon steel drums and fifty-seven gallon wooden barrels. In this case, too, no tax was imposed upon the containers of smaller size. Moreover, for the larger containers in both cases, in addition to differential prices and conscious selection by the customers, there were regular markets for the resale and re-use of the containers. In each of these cases the purchaser of the contents expressed an interest in the containers, and backed up his expressed interest by being willing to pay for the kind of container he wished. The opinions in the cases to which reference is made, both in this court and the Court of Appeals, clearly indicate the substantial character of the transactions involved in the sale and purchase and uses of these relatively valuable containers. (See, e.g., opinion by Mr. Justice CALLAHAN in *Matter of American Molasses Co.* v. *McGoldrick, supra,* p. 652, and the opinion of Judge LEHMAN, later Chief Judge, in the same case in the Court of Appeals, *supra,* p. 273.) In the *Wood Packing Box Co.* case there was no differential price in the sale of the shipping containers. But the shipping containers were substantial and relatively valuable wooden crates. This constituted a significant, if secondary, factor in the transactions involving the sale of their contents as did also the existence of a wide regular market for their resale and re-use.

To apply these cases to the shipment of soap and toilet articles in paperboard shipping cartons to retail druggists and grocers is to reduce a sound distinction to an absurdity. In the same vein and to the same effect is the effort to argue that druggists and grocers who must remove the clumsy broken cartons from their premises are engaged in selling them as a by-product part of their business to either dealers or the ultimate consumer who buys his groceries in a partially destroyed paperboard carton.

Applicable to the facts in this case is the principle involved in *Matter of Carrano* v. *McGoldrick* (270 App. Div. 925) in which it was determined that a seller of baling wire to waste material dealers, who were using the baling wire to bind the products they sold, was obligated to collect the retail sales tax from the waste material dealers as consumers of baling wire. For the purposes of the retail sales tax the company is in the position of the waste material dealers. The paperboard cartons, like the baling wire, are consumed in their limited use in the shipment of merchandise. In neither case is the customer particularly concerned with the type of container or wrapper except as it serves to effect delivery of goods purchased.

The company in the instant case obtained resale certificates from the druggists and grocers in which it was generally certified that all the products purchased from the company were purchased for resale. The certificates, of course, did not specify the shipping containers so that the certificates do not represent a deliberate or perhaps even conscious statement on the part of the retail customers. In any event the resale certificates are not binding and may not serve the purpose of altering the actual facts.

For the foregoing reasons and upon the authorities cited it is held that the company was the consumer of the shipping cartons in which it shipped the soaps and toilet articles to its retail customers. As indicated earlier, on this view, the company may be liable for a retail sales tax as a consumer of the cartons. That may involve other considerations not determinable upon the pleadings or the record here.

The determination of the comptroller of the city of New York should be annulled, without costs.

DORE, J. (dissenting). The cartons containing petitioner's soap sold to the retail grocers and druggists were not sold for resale and petitioner, as vendor, should have collected the tax. In my opinion too, the cartons were not consumed by the vendor when it used them for shipping the soap to its customers. Obviously, if any of the packages were returned by the druggists or grocers, e.g., who found they had ordered too many, the cartons in question would not have been '' consumed '' in the delivery to the retailer. In addition there is no proof that some third party made the cartons and sold them to the petitioner. It may well be that a soap manufacturer of this magnitude would make its own cartons and obviously would not owe a tax as vendee for cartons that it never purchased from any-

60 

body else. In this case the resale certificate did not specify the cartons used for shipping and is not here controlling.

Accordingly, I dissent and vote to confirm the comptroller's determination, with costs.

PECK, P. J., CALLAHAN and BASTOW, JJ., concur with BREITEL, J.; DORE, J., dissents and votes to confirm determination, with costs in opinion.

Determination annulled, without costs.