In the Matter of DAIRYLEA COOPERATIVE INC., Petitioner, *v.* STATE TAX COMMISSION, Respondent.

Third Department, April 19, 1973.

*Bond, Schoeneck & King (Wallace J. McDonald, George H. Bond, Jr., and Charles B. Chernofsky* of counsel), for petitioner.

*Louis J. Lefkowitz, Attorney-General (Vincent P. Molineaux* and *Ruth Kessler Toch* of counsel), for respondent.

HERLIHY, P. J.   This is a proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which denied an application for revision of such taxes assessed against petitioner for the period of August 1, 1965 through November 30, 1967.

In this proceeding the court is called upon to determine (1) whether the sale by petitioner of ice cream in bulk in three-gallon containers constitutes a retail sale of such containers within the meaning and intent of article 28 of the Tax Law, and, assuming such activity constitutes a retail sale of the containers giving

rise to sales and/or use tax liability, (2) whether, as a matter of equity, the State Tax Commission's delay of approximately three and one-half years in rendering a determination on the petitioner's application for revision of the assessment of sales and/or use taxes precludes the application of penalties or charge of interest on the amount of the deficiency assessed against the petitioner.

Petitioner Dairylea Cooperative Inc. [formerly Dairymen's League Co-operative Association Inc.] is a nonstock co-operative which is owned and managed by its approximately 12,000-member dairy farmers. The association is engaged in the manufacturing, processing and distribution of milk and dairy products, and maintains a branch for the manufacture of ice cream and ice-cream products at Wurz Avenue, Utica, New York.

In connection with its manufacture of ice cream, petitioner purchases, without the payment of a sales tax, three-gallon ice-cream containers from Sealright Corporation. These containers are made of corrugated cardboard with metal reinforcement bands at the top and bottom. At its Wurz Avenue plant, the petitioner packs the three-gallon containers with ice cream which it sells in bulk to wholesalers and commercial users such as bakeries and ice cream stores or parlors. Typically, the sealed three-gallon containers are shipped to petitioner's customers in refrigerated trucks. And, upon receipt, the entire container with its contents is placed in a freezer compartment. Thereafter, the petitioner's customers scoop the ice cream from the containers for service to their patrons. When the three-gallon container is emptied, it is discarded as waste. The petitioner's customers are not billed separately for the containers in which the ice cream is shipped, but rather the sales price of the bulk ice cream includes the cost of the container and the price of the ice cream depends upon the size of the container in which it is shipped.

The petitioner filed New York State and local sales and use tax returns under articles 28 and 29 of the Tax Law wherein it reported that no taxes were due and owing for the periods ending August 31, 1965 through November 30, 1967.[1] Subsequently, as a result of a field audit with respect to these sales and use tax returns, a notice of determination was issued by the Department of Taxation and Finance on July 16, 1968 against the petitioner, imposing sales and use taxes on (a) shipping

1. All petitioner's sales are exempt with the exception of a few taxable sales of ice cream cabinets.

supplies including three-gallon cardboard containers,[2] (b) plant and office supplies, (c) repairs to equipment, and (d) utility purchases of gas and electricity, in the total amount of $4,979.14. Petitioner paid $2,520.09 of the amount assessed against it leaving a balance of $2,459.05 which represented the tax due with respect to the three-gallon containers included in item (a) of the notice of determination.

On August 20, 1968 petitioner applied for a hearing and for revision of that portion of the notice of determination imposing a tax in the amount of $2,459.05 with respect to the three-gallon ice-cream containers. The hearing was held on December 2, 1968 and, after a delay of approximately three and one-half years, which delay concededly was in no way attributable to the petitioner, the respondent State Tax Commission, on February 22, 1972, denied the petitioner's application for revision of the amount of the sales and/or use tax assessed against it. This determination was based upon a finding that the sales by the petitioner of the three-gallon containers to its customers were not sales of tangible personal property for resale as such or as a physical component part of tangible personal property and, therefore, such sales constituted "retail sales" in accordance with section 1101 (subd. [b], par. [4], cl. [i]) of the Tax Law.[3]

Upon being notified of the Commissioner's determination, the petitioner, within the requisite statutory time limitations, commenced the present article 78 proceeding to review that determination (Tax Law, §§ 1138, 1243). Pursuant to subdivision (g) of CPLR 7804 this proceeding has been transferred to this court for disposition.

At the hearing before the respondent State Tax Commission, the petitioner contended that its customers purchased the three-gallon containers for the purpose of resale as an item of tangible personal property, and, therefore, no sales and/or use tax was due and owing thereon. In this proceeding, however, it contends, in substance, that no sales and/or use tax is due and owing on

2. The Department of Taxation and Finance did not seek to impose or collect a sales and/or use tax in connection with containers used for the packaging of lesser quantities of ice cream such as gallons, half-gallons, quarts, pints and Dixie cups.

3. " (4) Retail sales. (i) A sale of tangible personal property to any person for any purpose, other than (A) for resale as such or as a physical component part of tangible personal property, or (B) for use by that person in performing the services subject to tax under paragraphs (1), (2), (3) and (5) of subdivision (c) of section eleven hundred five where the property so sold becomes a physical component part of the property upon which the services are performed or where the property so sold is later actually transferred to the purchaser of the service in conjunction with the performance of the service subject to tax.

the three-gallon containers since they became a physical component of tangible personal property, that is, the ice cream packed therein, for resale.

There are no specific provisions in the Sales and Use Tax Law dealing with containers and wrapping and packaging materials and supplies. Consequently, the resolution of the present controversy is dependent upon the general provisions of article 28 of the Tax Law and applicable precedents.

Section 1105 of the Tax Law imposes a sales tax on all retail sales of tangible personal property not otherwise exempted. The sales tax operates in such a way as to generally impose the tax upon the sale to the ultimate consumer at which time the price paid for the taxable item is presumably at its highest. There can be no doubt in the present case that the ice-cream containers were not resold by the purchasers thereof and, accordingly, the sale by the petitioner was a retail sale of the containers, although the ice cream itself was purchased for resale.

The case of *Matter of American Molasses Co.* v. *McGoldrick* (281 N.Y. 269) dealt with the general question of whether or not the containers of goods sold for the purposes of resale became a physical component of the goods contained in the containers and the court held that the containers retained their physical identity and did not become a component part of the goods packaged therein. In the *Molasses* case one of the containers involved consisted of barrels wherein molasses was packaged and it would appear that the *Molasses* case would compel the conclusion that the containers with which we are involved in this case did not become a part of the ice cream so as to have been purchased from the petitioner for the purpose of resale as a part of the ice cream. In the *Molasses* case the tax, in regard to the afore-mentioned barrels, had been assessed against the petitioner upon the theory that its use of the barrels for packing purposes constituted the consumption of such barrels thereby making the petitioner liable for the tax as a purchaser at retail. The subsequent case of *Matter of Colgate-Palmolive-Peet Co.* v. *Joseph* (308 N. Y. 333) reaffirmed the *Molasses* case and held that a shipment container of soap which was not purchased from the manufacturer of the soap by retail stores for the purpose of further reselling the said containers, constituted a purchase at retail of the containers from the manufacturer. The general applicability of the afore-mentioned cases to the present case seems inescapable and consequently the petitioner herein cannot escape liability upon the premise that the ice-cream containers became a physical component of the ice cream contained therein and, therefore, were purchased for resale within the meaning of the Tax Law.

However, the items allegedly subject to the tax in this case, while not to be considered as a physical component of the ice cream insofar as resale of the ice cream is concerned, are an essential component to the sale of the ice cream. The ice cream being sold by petitioner was *not* exempt from the sales tax because it was an item sold for resale, but *was* exempt because it was food and because *no* sales tax could attach to it unless sold under certain particular limitations specified in the Tax Law (Tax Law, § 1115, subd. [a], par. [1]).

It is common knowledge that food and food products generally require containers both for handling and sanitation purposes.

In this regard, the petitioner in its brief makes the following comment: " The Court's attention is also directed to the example of food and beverages exempted from the sales tax by Section 1115(a) (1). Conceding that when a consumer purchases a loaf of bread or quart of milk he coincidentally purchases the wrapper or carton in which these products are packaged, the Legislature obviously did not intend that a portion of the total sales price be allocated to the container and that a sales tax be collected on these items."

It does appear that by analogy the holding in the present case and the prior decisions in *Matter of American Molasses Co.* v. *McGoldrick* (*supra*) and *Matter of Colgate-Palmolive-Peet Co.* v. *Joseph* (*supra*) would indicate that, as to all retail sales of food in grocery stores, the container of the food (the can for the soup, the box for the salt, the wrapper for the bread, *et cetera*) would, indeed, be taxable as a sale at retail.

The Legislature, having directly exempted food and the production of food and agricultural products from the sales tax except under carefully delineated circumstances, the imposition of a tax upon the containers directly necessary to obtain the food for consumption would result in a tax upon the food. The ultimate consumer is the one being protected and benefitted by the exemption upon food and, this being a policy of the Legislature spelled out in the statute, the literal interpretation of the statute to tax the immediate container of the food in the absence of any clear intent of such incidental tax by the Legislature might undermine the general policy of exemption of food.

Not only are sales of food given a general specific exemption, pursuant to section 1115 of the Tax Law, but also paragraph (6) of subdivision (a) thereof exempts personal property used and consumed on farms in the production for sale of food. The steps from the processor to the consumer are not directly referred to in the statute. It must be noted that the exemption for food is actually an exception to the statute which imposes the tax upon

all retail sales and that the taxation of food in regard to certain sales is accomplished by an exception to the exception.

While the *American Molasses* and *Colgate-Palmolive-Peet* cases (*supra*) did not directly consider the question of whether or not the containers of exempt goods should also be considered within the exemption for purposes of the sales tax, it was pointed out in the opinion of the Appellate Division in the *Molasses* case that the contents of the containers were specifically exempted from the tax as sugar products and that court stated that the fact that the contents were exempt would not also exempt the containers (*Matter of American Molasses Co.* v. *McGoldrick*, 256 App. Div. 649, 654, affd. 281 N. Y. 269). It would seem common knowledge that in many instances the costs of the container of foodstuffs might very well far exceed the value of the food contained therein and that a tax upon the containers might very well be equivalent to a tax upon the value of the food itself. Nevertheless, the statute does not specifically exempt the containers of foods from the imposition of the tax and in view of the *American Molasses* and *Colgate* cases (*supra*), this court must confirm the respondent's determination that the containers were taxable upon their sale to the ultimate consumer.

If the Legislature intended that the immediate physical containers of foodstuff be included in the exemption of food itself, such language could have been utilized by the Legislature in enacting the statute. Parenthetically, since the decisional law upon which this decision is bottomed to sustain the determination of the Tax Commission, there have been many changes in the form and manner of packaging in our present economy which quite properly may suggest re-examination of the existing Tax Commission ruling. However, in the first instance, it is a subject matter for the Legislature rather than the court's determination.

Upon the present record, it does not appear that the petitioner has been charged with interest for the period from December 4, 1968 to the date of its determination and, further, it does not appear that any penalty has been assessed for the failure of the petitioner to have promptly paid the tax assessed against it. Consequently, it is unnecessary to reach the issue as regards the effect of the Tax Commission's delay in rendering its determination as to the assessment of penalties and/or charge of interest.

The determination should be confirmed, and the petition dismissed, without costs.

GREENBLOTT, COOKE, SWEENEY and MAIN, JJ., concur.

Determination confirmed, and petition dismissed, without costs.