In the Matter of BURGER KING, INC., Appellant-Respondent, v STATE TAX COMMISSION, Respondent-Appellant. (Proceeding No. 1.)

In the Matter of DAVMOR INDUSTRIES, INC., Respondent, v STATE TAX COMMISSION, Appellant. (Proceeding No. 2.)

In the Matter of EDGMOR, INC., Respondent, v STATE TAX COMMISSION, Appellant. (Proceeding No. 3.)

Third Department, November 8, 1979

448

## APPEARANCES OF COUNSEL

*Nixon, Hargrave, Devans & Doyle (Sterling L. Weaver* of counsel), for appellant-respondent in Proceeding No. 1 and respondents in Proceedings Nos. 2 and 3.

*Robert Abrams, Attorney-General (Maurice K. Peaslee* and

*Shirley Adelson Siegel* of counsel), for respondent-appellant in Proceeding No. 1 and appellant in Proceedings Nos. 2 and 3.

*Gerard A. Navagh* for New York State Restaurant Association, Inc., *amicus curiae.*

*Blank, Rome, Comisky & McCauley (Ronald H. Surkin* and *Leonard P. Nalencz* of counsel), for McDonald's System, Inc., *amicus curiae.*

### OPINION OF THE COURT

MIKOLL, J.

The material facts are not in dispute. Burger King, Inc., a fast food restaurant operator, during the period of assessment, purchased paper products consisting of wrappers for hamburgers, cups for coffee and other drinks, sleeves for french fries and containers for milk shakes and transferred these paper products to its customers, along with the appropriate food product, for a single price. Burger King did not pay a sales tax on these paper products when it purchased them from its supplier. On July 27, 1973, the Sales Tax Bureau issued to Burger King a notice of determination and demand for payment of sales tax totaling $12,583.93, including interest and penalty for the tax period in question, March 1, 1970 through November 30, 1972.

Davmor Industries, Inc., sold fryers, ovens, broilers, coffee urns and milk shake machinery it manufactured to Burger King during the assessment period from June 1, 1970 through November 30, 1972. Davmor did not collect any sales tax on these sales. On August 30, 1973, the Sales Tax Bureau issued a notice of determination and demand for payment of sales tax totaling $6,645.33, including penalty and interest of these sales.

Edgmor, Inc., purchased two self-service restaurants in bulk from E.C.M. Enterprises, Inc., on January 30, 1970. Edgmor, as purchaser, agreed to pay all sales and use taxes due on the bulk sale, but failed to pay sales tax on ovens, fryers, broilers, coffee urns and milk shake equipment obtained in the transaction. The Sales Tax Bureau determined that $1,767.73 was due in unpaid sales tax, including interest and penalty, as a result of the failure to pay the tax due on the sale of the described items.

After hearings, the State Tax Commission ruled all three corporations liable for the assessments. Special Term con-

firmed the assessment against Burger King, but annulled the assessments against Davmor and Edgmore.

■ Proceeding No. 1 presents for review the question whether Burger King's purchase of the paper containers which were resold with their contents to ultimate individual consumers is a taxable purchase to Burger King. Since the issue is whether the transaction is subject to taxation, and involves an exclusion not an exemption, the relevant statutory provisions are to be strictly construed in favor of the taxpayer (*Matter of Grace v New York State Tax Comm.,* 37 NY2d 193, 196; *Matter of Finch, Pruyn & Co. v Tully,* 60 AD2d 192; *Matter of Nehi Bottling Co. v Gallman,* 39 AD2d 256, 257, affd 34 NY2d 808). Further, the facts herein are not disputed and statutory interpretation, not substantial evidence, is determinative of this issue (*Matter of Finch, Pruyn & Co. v Tully, supra,* p 194).

Subdivision (a) of section 1105 of the Tax Law imposes a sales tax on "[t]he receipts from every retail sale of tangible personal property", subject to specified exemptions. "Retail sale" is defined as "[a] sale of tangible personal property to any person for any purpose, other than (A) for resale as such or as a physical component part of tangible personal property" (Tax Law, § 1101, subd [b], par [4], cl [i]).

The commission ruled that the purchase of the paper containers was not excluded by reason of the containers being physical component parts of tangible personal property, reasoning that the sale of food in restaurants is "a hybrid transaction involving both the sale of tangible personal property and a service" and is thus not tangible personal property as that term is used in article 28 of the Tax Law. The commission found that food sold by restaurants is not tangible personal property since it is not taxed under subdivision (a) of section 1105, but, rather, is taxed under subdivision (d) of that section.

■ Special Term agreed with the conclusion reached by the commission that the purchase of the paper containers was not excluded by reason of being physical component parts of tangible property, but disagreed with the commission's reasoning. Special Term found that food sold in restaurants is tangible personal property and we agree. Section 1101 (subd [b], par [6]) defines the term "tangible personal property" as being "[c]orporeal personal property of any nature." Subdivision (b) of section 1101 states that its definitions apply to taxes

imposed by subdivisions (a), (b), (c) and (d) of section 1105. Further, the definition of tangible personal property mentions particular exceptions and food prepared by restaurants is not found among them (Tax Law, § 1101, subd [b], par [6]).

■ Although Special Term found that food served from restaurants was tangible personal property, it ruled that the paper containers were not physical component parts of tangible personal property. This reasoning is supported by New York case law (*Matter of American Molasses Co. v McGoldrick*, 281 NY 269, 273; *Matter of Dairylea Coop. v State Tax Comm.*, 41 AD2d 312, 316, mot for lv to app den 33 NY2d 513).

Both Special Term and the commission erroneously concluded that the purchase by Burger King of the paper containers was not excluded as a "resale as such" because the sale to Burger King's customers was incidental to its business. The determinative event in whether a resale as such has occurred is not whether the sale is incidental to the sale of the contents to the retailer, but, rather, whether the purchase by the supplier is for sale of the container and its contents to the ultimate consumer, in this case, to Burger King's individual customers. In *Matter of Colgate-Palmolive-Peet Co. v Joseph* (308 NY 333) relied upon by Special Term, the sale to the retailer of cartons ended with the retailers who discarded them. The court, however, noted that the cartons were sold only to facilitate the sale of the goods and upheld imposition of a tax on the sale to the retailers. Notably, a tax was not imposed on the manufacturer's purchase of the cartons. Here, Burger King is not disputing the assessment on sales to its customers, only the assessment on its purchase of the paper products. *Matter of American Molasses Co. v McGoldrick* (supra) and *Matter of Dairylea Coop. v State Tax Comm.* (supra) are also authority for the position of Burger King that it is not liable for the tax when it purchases the containers, but only when it sells them.

On these appeals, the commission does not contest the fact that if the paper containers in issue contained items other than food prepared by a restaurant, the purchase thereof would not be taxable. We can perceive no real distinction between such containers and find any tax based solely on such difference to be without a rational basis.

Upon this record, we conclude that the purchase of the wrappers, cups, sleeves, *et cetera,* in question was for resale as

such and it was not subject to sales tax liability as a matter of law (Tax Law, § 1101, subd [b], pars [4], [5], [6]; *Matter of Finch, Pruyn & Co. v Tully,* 69 AD2d 192, *supra; Matter of Nehi Bottling Co. v Gallman,* 39 AD2d 256, 257, affd 34 NY2d 808, *supra).* The determination of the State Tax Commission in Proceeding No. 1 is, therefore, without basis in law and erroneous, and should be annulled. The decision of Special Term, insofar as it upholds the determination of the commission in Proceeding No. 1, should be reversed.

Proceedings Nos. 2 and 3 present for review the question of whether the ovens, fryers, broilers, coffee urns and milk shake machinery used to process the food and drink are for use directly and exclusively in production of tangible personal property and, therefore, exempt from the sales tax. The issue here involves a statutory exemption and, consequently, the relevant statute must be construed against the taxpayer "although the interpretation should not be so narrow and literal as to defeat its settled purpose" *(Matter of Grace v New York State Tax Comm.,* 37 NY2d 193, 196, *supra).*

Section 1115 (subd [a], par [12]) of the Tax Law, as in effect at the times in question, exempted from sales tax the receipts from the sales of the following: "Machinery or equipment for use or consumption directly and exclusively* in the production of tangible personal property * * * by * * * processing".

The commission determined that the machinery was not exempt, ruling that restaurant prepared food is not tangible personal property and that the machinery was not used in "production". Special Term found that all of the machinery was necessary and essential to the processing of the food sold by Burger King and annulled the commission's determination. We agree with Special Term and would affirm on this issue.

■ ■ We have already decided that restaurant prepared food is tangible personal property. We now turn to the commission's argument that the machinery was not used in the production of the tangible personal property. It is argued that a broiler that merely cooks ground meat already processed and formed into patties, or a frier that fries french fries already peeled, cut and processed prior to purchase does nothing more than can be done in a home kitchen and that to conclude otherwise strains the term "production" as used in

---

* Effective September 1, 1974 "predominantly" was substituted for "exclusively" (L 1974, ch 851, § 1).

the statute. However, it cannot be denied that the items are processed by the machinery into finished edible food and drink products and that the processing furnished by Burger King is the final step which transforms the unfinished processed item into a finished one, i.e., a hamburger, a milk shake, *et cetera*.

Further, we note that the underlying purpose of the machinery exemption is to avoid double taxation *(Matter of Niagara Mohawk Power Corp. v Wanamaker,* 286 App Div 446, 448, affd 2 NY2d 764; see, also, *Matter of Finch, Pruyn & Co. v Tully,* 69 AD2d 192, *supra). As we said in *Finch, Pruyn & Co. (supra,* p 196), "[T]he construction placed upon statutes by the agency responsible for their administration must yield when it is unreasonable or irrational (cf. *Matter of Howard v Wyman,* 28 NY2d 434)", and the commission's construction of the term "production" would defeat the settled purpose of the exemption given for machinery in section 1115 (subd [a], par [12]) of the Tax Law to avoid double taxation in the production of tangible goods.

It is unnecessary to reach other issues raised by petitioners.

The judgment should be modified, on the law, by reversing so much thereof as dismissed the petition in Proceeding No. 1 and by granting said petition, and annulling the determination of the State Tax Commission which sustained an assessment of sales taxes against petitioner Burger King, Inc., and, as so modified, affirmed, with one bill of costs to petitioners, and the matter remitted to the State Tax Commission for further proceedings not inconsistent herewith.

STALEY, JR., J. (dissenting in part and concurring in part). We would affirm the judgment appealed from in all three proceedings. Special Term held that in Proceeding No. 1 the determination reviewed should be confirmed. We agree.

The main issue in Proceeding No. 1 is whether paper products purchased by it, such as wrappers for sandwiches, cups containing coffee, soda and other drinks, and sleeves for holding french fries and sold to its customers were not sales of tangible personal property for resale as such or as a physical component part of tangible property and, therefore, such sales to Burger King constituted "retail sales" in accordance with section 1101 (subd [b], par [4]) of the Tax Law.

The paper products purchased by Burger King and used to serve food and drink to its customers clearly do not become physical component parts of the food and drink which Burger

King serves, and because they were not sold "as such", such paper products were taxable to Burger King when purchased. Burger King is not in the business of selling paper products and it does not charge its customers separately for such paper products. Burger King purchases the paper products at retail for its own use and consumption in serving meals to its customers and not for resale "as such". There can be no doubt in the present case that the paper products involved were not resold by the purchasers thereof and, accordingly, the sale to Burger King was a retail sale of the products *(Matter of Colgate-Palmolive-Peet Co. v Joseph,* 308 NY 333; *Matter of Dairylea Coop. v State Tax Comm.,* 41 AD2d 312).

We agree with Special Term's holding that (95 Misc 2d 442, 444-445): "When Burger King sold its food contained in the wrapper or container to a customer, the wrapper or container had no value apart from the food and is discardable as waste only as soon as the food is consumed. The customer does not separately buy the wrapper or container. Therefore, those items are used by Burger King ' "only to facilitate the sale of the product packed in the container and *not for the purpose of resale of the container as an item of commerce" '* (see *Matter of Colgate-Palmolive-Peet Co. v Joseph,* 308 NY 333, 338; *Matter of American Molasses Co. v McGoldrick,* 281 NY 269) and cannot be said to be sold by Burger King to the customer for resale so as to qualify for that exemption from the sales tax."

The determination of the State Tax Commission in Proceeding No. 1 should be confirmed.

MAHONEY, P. J., and SWEENEY, J., concur with MIKOLL, J.; STALEY, JR., and KANE, JJ., concur in part and dissent in part in a separate opinion by STALEY, JR., J.

Judgment modified, on the law, by reversing so much thereof as dismissed the petition in Proceeding No. 1, and by granting said petition, and annulling the determination of the State Tax Commission which sustained an assessment of sales taxes against petitioner Burger King, Inc., and, as so modified, affirmed, with one bill of costs to petitioners, and matter remitted to the State Tax Commission for further proceedings not inconsistent herewith.