OPINION OF THE COURT
Fuchsberg, J.
In this consolidated article 78 proceeding, brought on, in the nature of certiorari, by three business-related taxpayers, the State Tax Commission asks us to review an order of the Appellate Division which modified an order of the Supreme Court which, in part, had annulled the commission’s determinations denying petitioners’ applications for revision of sales tax assessments. In particular, in the context of the “fast food” restaurant business, this appeal poses issues that test the scope of subdivision (a) of section 1105 of the Tax Law, which imposes taxes on retail sales of “tangible personal property”. The focus is on whether the taxpayers come within the exceptions to this impost articulated in either section 1101 (subd [b], par [4], cl [i], subcl [A]) of the Tax Law, which excludes a sale “for resale as such or as a physical component part of tangible personal property” (emphasis added), or section 1115 (subd [a], par [12]) of the Tax Law, which exempts the sale of machinery and equipment used to produce “tangible personal property”.
The operative facts are undisputed.
Burger King, a nationwide “fast food” chain, refused to pay sales tax on its purchases of certain paper or plastic packaging materials during the tax period March 1, 1970 through November 30, 1972. The materials consisted of wrappers for hamburgers, cups for beverages and “sleeves” for french fries.[1] The taxpayer insists that it bought these *619 articles for the purpose of resale and that, accordingly, their purchase was tax free.
Davmor Industries, Inc., a wholly owned subsidiary of Burger King, manufactures restaurant equipment for sale to Burger King establishments. During the period between June 1, 1970 through November 30, 1972, it did not collect taxes on such sales of ovens, fryers, broilers, coffee urns, milk shake machinery and other similar equipment. It claims exemption because the equipment was used exclusively and directly to manufacture and otherwise process the food and beverages Burger King sells.
Edgmor, Inc., then a fully owned subsidiary of Burger King, made a bulk purchase of two self-service restaurants from a third party on January 30,1970. By the terms of the purchase agreement, Edgmor agreed to assume responsibility for the remittal of any sales taxes due the State on account of this transaction. It did not do so as to the food preparation equipment it thus acquired. The ground on which it unsuccessfully resisted the ensuing State Sales Tax Bureau’s assessment is the same one urged by Davmor.
In sustaining the Burger King assessment, the commission’s rationale was that the taxpayer’s patrons received the paper products “only as an incident to the purchase of food and drink” and thus, rather than being bought by Burger King for resale “as such”, were consumed by Burger King in the course of consummating the “hybrid” transactions involved in the delivery of its combined food and service. It also asserts that the food and drink is not “tangible personal property” within the meaning of that phrase as it is used in subdivision (a) of section 1105. On this basis, it then also reasoned, consistently, that the machinery and equipment in the Davmor and Edgmor cases, even if the processing of the restaurant food and drink could be said to be manufacturing, was not used for the “production of tangible personal property”.
In the ensuing court proceedings, Special Term confirmed the determination as to Burger King, but on a dif *620 ferent theory. Though it held the food and drink was tangible personal property, it decided that the packaging did not qualify for the exclusion because it was neither a physical component part of the product nor sold by Burger King for resale as such and so served “only to facilitate the sale of the product”. As to the equipment sold by Davmor and that bought by Edgmor, having held the food was tangible personal property, the court rejected the commission’s conclusion that the machinery was not exempt under section 1115 (subd [a], par [12]) of the Tax Law. For its part, the ' Appellate Division, two Justices dissenting, annulled the assessments in toto. For the reasons which follow, we agree with the result it reached as to Burger King, but not as to Davmor and Edgmor.
For this purpose, we first look at whether Burger King’s packaging material is excepted from the tax on the theory that it is a “physical component part” of the “tangible personal property” Burger King sells to its patrons (Tax Law, § 1101, subd [b], par [4], cl [i], subcl [A]). To arrive at an answer, preliminarily we address the subissue of whether food sold by restaurants is “tangible personal property” within the reasonable intendment of the Tax Law.
 On that score, both courts below simply applied the broad definition of “tangible personal property” contained in the definitional section of the sales tax statute, i.e., “ [c] orporeal property of any nature” (Tax Law, § 1101, subd [b], par [6]). This interpretation, however, creates an ambiguity in the statutory scheme. If restaurant food is merely “tangible personal property”, then subdivision (a) of section 1105 of the Tax Law, which imposes a tax on such retail sales, would seem to suffice. Nevertheless, there is a separate section (Tax Law, § 1105, subd [d]), which imposes a tax on the sale of restaurant food.[2] Nowhere in this section is reference made to “tangible personal property”. It is a familiar and salutary canon of construction that courts, in construing apparently conflicting statutory pro *621 visions, must try to harmonize them (McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 98, 141).
This principle in mind, the commission’s assertion that restaurant food, within the meaning of the Tax Law, is distinct from “tangible personal property”, provides a ready means to reconcile the differing statutory sections. For the purchase of restaurant food is more than the mere receipt of an edible or a potable. Surely, it requires no impermissible outreach of the imagination to see it as a delivery of food and service in combination. Whether the proportion of the combination is 90% of service and 10% of food, as it might be in a gourmet restaurant which features pheasant under glass, or whether it is 10% of service and 90 % of food, as it might be at a hot dog stand, it is difficult to see why the commission could not view the totality, as it did, as a “hybrid” transaction rather than as the sale of “tangible personal property”. In so saying, we recognize that where the interpretation of a statute or its application involves a special knowledge, courts regularly defer to administrative expertise (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459).
Indeed, it is appropriate here to comment on the modern-day economic and social phenomenon which, not without cause, has come to be known as the “fast food restaurant”. Its universal proliferation on our national scene has made it common knowledge that such restaurants, for better or worse, are designed to mass-produce uniform, popular-priced food and drink products for consumption on ready demand on a conveyor-like, assembly-line basis. The amount of service it incorporates in its operation may be different from that of other types of restaurants, but, if anything, may be more significant. For its method of doing business requires that the food and drink it serves be in a form available for delivery whenever the unheralded patron chooses to arrive. The goal is streamlined movement of bagged food in sanitary form from restaurant to customer, who takes it in its ready-to-eat state without pause to wherever, on or off the premises, she or he wishes to consume it. Key to imparting these vaunted service features— of speed, sanitation and portability — is the use of paper or *622 plastic goods in its preparation, storage and delivery (see, generally, Levitt, Production Line Approach to Service, Harv Business Rev, Sept.-Oct., 1972).
Turning now to the applicability of the sale “for resale as such” exclusion, we observe, in somewhat greater detail, that each of the prior tribunals has approached the matter differently. The commission, of the view that the suppliers’ sales of the packaging to Burger King were the crucial events, ruled them retail sales on which the restaurant was to pay the tax. It reasoned that, when the packaging accompanied the edibles Burger King delivered to its customers, it did so only as “an incident to the purchases of the food”, and not as sales of the wrappings as such. On that note, Burger King, as the first buyer who had made its purchase for other than a resale as such, was to be regarded as a retail purchaser and therefore liable for the tax in its capacity as vendee. In contrast, Special Term focused on the transactions between Burger King and its customers. It, nonetheless, concluded that Burger King was liable for the tax, but as vendor (see Tax Law, §§ 1131, 1132), by taking the tack that, though the transfers of the restaurant’s wrappings to the patrons constituted sales, they were ones at retail, rather than “sales for resale”. Finally, the majority, at the Appellate Division, satisfied that the sales of the packaging material to Burger King by its supplier indeed were the controlling transactions, decided that the sales were “for resale as such” and, accordingly, entitled to the benefit of the exclusion at the supplier-Burger King level.
As to this problem, decisional guidance is to be found in the so-called “container cases” (Matter of American Molasses Co. v McGoldrick, 281 NY 269, 273; Matter of Colgate-Palmolive-Peet Co. v Joseph, 308 NY 333, 338; Matter of Dairylea Co-op. v State Tax Comm., 41 AD2d 312, 316, mot for Iv to app den 33 NY2d 513). The nub of these cases is that a sale is not one at retail when a supplier sells containers to a wholesaler or manufacturer, who then sells his product packed in these containers either to a retailer or to an ultimate consumer. The courts reasoned that the containers, although bought to be resold as “an incident to the sale of the contents” (Matter of American Molasses Co. v *623 McGoldrick, supra, p 274), were nonetheless sales for resale as such. The cartons, although “not inseparable” from the contents, were, in this context, being resold “as containers” (see Matter of Colgate-Palmolive-Peet Co. v Joseph, supra, p 339 [emphasis in original]).
All the more is this so in the case of Burger King, whose packaging, as we have seen, is such a critical element of the final product sold to customers. So regarded, the packaging material is as much a part of the final price as is the food or drink item itself. It would be exalting form over substance, therefore, to hold that a resale of these paper products does not take place merely because Burger King does not list a separate price.
Now, though the relative delicacy of the paper goods employed in Burger King’s “fast food” operation is qualitatively much different from the grosser and coarser containers (pails, wooden barrels, metal drums, wooden crates, burlap sacks and three-gallon ice cream containers) with which the courts treated in the cited cases, and though the containers in these cases were largely confined to conventional delivery functions rather than the far more intimate product association afforded to Burger Kings’ wrappings, in the present case, as in the cited ones, the containers and their contents at no time become “inseparably connected” (Matter of American Molasses Co. v McGoldrick, 281 NY 269, 273-274, supra). It follows that Burger King purchases its packaging from its suppliers for “resale as such” to its customers and thus is entitled to the exclusion of section 1101 (subd [b], par [4], cl [i], subcl [A]), of the Tax Law.
This holding also brings that statute within the spirit underlying our sales tax law, which is to impose the tax only upon the sale to the ultimate consumer, at which time the price paid for the taxable item would presumably be at its highest. (See Matter of Dairylea Co-op. v State Tax Comm., 41 AD2d 312, mot for lv to app den 33 NY2d 513, supra). Yet if Burger King were required to pay sales tax on its purchases of packaging, the consumer would end up paying a tax on the sales tax. Clearly, this pyramiding of taxes would distort the original legislative intent and is to be avoided.
*624 Lastly, we now treat with Edgmor’s and Davmor’s contention that section 1115 (subd [a], par [12]) of the Tax Law exempted the sale of machinery used to process food and drink. That section, as it existed during the assessment periods at issue provided:
“(a) Receipts from the following shall be exempt from the tax * * *
“(12) Machinery or equipment for use or consumption directly and exclusively in the production of tangible personal property * * * for sale, by manufacturing [or] processing” (emphasis added)[3].
In effect, we have already rejected the taxpayers’ claim of an exemption under this legislation. As its plain language tells us, necessary to a conclusion that the provision applies is a finding that the machinery is used to produce “tangible personal property”. While in another context (e.g., the production of a frozen food product to be sold in a grocery store) these machines might be said to be so used, we have already demonstrated that here the production efforts are geared to the processing and delivery of restaurant food — a category distinct from tangible personal property. Certainly, the commission is not to be faulted because, in refusing to classify restaurant food as tangible personal property, it did not allow the particular stage at which its products were being “serviced” to result in an inconsistent conceptualization of their nature. Consequently, we are compelled to conclude that the sales of the machinery and equipment at issue are not exempt.
For all these reasons, the order of the Appellate Division should be modified, in accordance with this writing and, as so modified, affirmed.

. Only so much of these items as were used by Burger King for on-premises consumption of meals are at stake on this appeal. The commission is not pursuing a like assessment as to off-premises consumption only because it failed *619 to give the taxpayer notice that taxes due on such sales were also to be the subject matter of his hearing. At the hearing, the taxpayer conceded liability as to outer bags, straws and coffee stirrers.

. Section 1105, in fact, imposes a sales tax on six separate types of transactions ranging from the sale of tangible personal property through admission charges for the use of places of amusement. Each type of transaction is taxed by a different subdivision of section 1105.

. Effective September 1, 1974 “predominantly” was substituted for “exclusively” (L 1974, ch 851, § 1).