943 F.2d 49
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
EQUITABLE BANK, N.A., Plaintiff-Appellant,
v.
FORD MOTOR COMPANY, Defendant & Third Party Plaintiff-Appellee,
v.
Seth C. HETHERINGTON, Jo Ann N. Hetherington, Third Party
Defendants-Appellees.
 No. 91-3020.
 United States Court of Appeals, Fourth Circuit.
 Argued June 3, 1991.
Decided Sept. 17, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CA-89-3329-S)
 Argued: C. Thomas Brown, Semmes, Bowen & Semmes, Baltimore, Md., for appellant; John Mark Thomas, Ford Motor Company, Dearborn, Mich., for appellees.
 On Brief: David F. Albright, Dana S.J. Nangle, Semmes, Bowen & Semmes, Baltimore, Md., for appellant; Robert D. Harwick, Thieblot, Ryan, Martin & Ferguson, Baltimore, Md., for appellees.
 D.Md.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and DONALD RUSSELL and WILKINSON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 In this case we affirm the district court's judgment that appellee Ford Motor Company holds a security interest in the inventory of bankrupt debtors superior to that of appellant Equitable Bank.
 
 I.
 
 2
 The inventories at issue are comprised of auto parts. Key Automotive was a wholesaler of Ford's Motorcraft line of parts. Since 1978 Ford has held a perfected security interest in Key's inventory and its proceeds. ARO Automotive is a retailer of Motorcraft parts which it would acquire from Key and which it would pay for when the parts were sold. Ford has a security interest in ARO's inventory, but it was not perfected in the state whose law governs this case, Maryland.
 
 
 3
 In 1988, the Roberts Automotive Corporation acquired Key and ARO. The Equitable Bank provided the financing for this acquisition. The bank acquired and perfected security interests in the inventories of the corporation and its two new subsidiaries.
 
 
 4
 In March 1989, Roberts Automotive Corporation and its subsidiaries filed separate Chapter 11 bankruptcy petitions. During the proceedings, a dispute arose between Ford and Equitable concerning the priority of their security interests in Motorcraft parts held by Key and ARO. The district court rejected Equitable's argument that Ford had agreed, during negotiations over the sale of Key and ARO, to subordinate its interests to Equitable's. The court also rejected Equitable's contention that Key by transferring parts to ARO had defeated Ford's superior priority interest in Key's inventory and had opened the way for Equitable's security interest to attach to the inventory.[1] Equitable now appeals.
 
 II.
 
 5
 Equitable primarily relies on two provisions of the Uniform Commercial Code to argue that ARO acquired Key's Motorcraft inventory free of Ford's security interest. According to Equitable, the sale of inventory to ARO terminated Ford's security interest because Ford's security agreement authorized the sale. See Md.Com.Law Code Ann. § 9-306(2). We disagree. The security agreement certainly authorized the sale of inventory, but this meant sales generating proceeds to which Ford's security interest would then attach; it was not intended to authorize a transfer of collateral that would not result in its immediate replacement with proceeds. Here, ARO apparently paid for the transferred inventory only when it sold the parts to customers. Moreover, "sale" seems an inapt description of the transactions between Key and ARO given that they were subsidiaries of the same company with the same president, and indeed, ARO had guaranteed Key's debt that Ford's security interest was designed to secure.
 
 
 6
 Additionally, Equitable argues that ARO took the inventory free of Ford's security interest because ARO was a buyer in the ordinary course of business. See Md.Com.Law Code Ann. §§ 9-307(1)(a), 1201(9). ARO, however, was hardly unaware, as required under § 1201(9), that the inventory transfers would violate Ford's security interest. It is difficult to understand how ARO could be considered a buyer in the ordinary course where, as the district court observed, the net effect of the transactions was "just as if Key had sold the goods to itself." Moreover, there must be a sale of goods before a party can become a buyer in the ordinary course. See Md.Com.Law Code Ann. §§ 1-201(9), 2-106(1). As we have noted, it is unclear whether the transactions here were sales or were more akin to consignments. See Blank v. Dubin, 267 A.2d 165, 167-8 (Md.1970).[2]
 
 
 7
 Finally, we cannot accept Equitable's argument that it entered into an enforceable subordination agreement with Ford. At most, Ford agreed to consider entering into such an agreement. An agreement to agree is unenforceable under Maryland law. See Service & Training, Inc. v. Data General Corp., 737 F.Supp. 334, 339 (D.Md.1990).
 
 III.
 
 8
 For the foregoing reasons, the judgment of the district court is
 
 
 9
 AFFIRMED.
 
 
 
 [1]
 Equitable then moved the district court to reconsider its judgment on the ground, among others, that the court had failed to distinguish between inventory held by a third subsidiary, Roberts Brothers Company, and inventory possessed by Key and ARO. The court refused to amend its judgment, ruling that Equitable had offered no persuasive justification for its failure to raise this argument earlier in the proceedings. We agree with the district court and shall not consider arguments relating to the Roberts Brothers Company inventory
 
 
 [2]
 Equitable also contends that it is entitled to the accounts receivable that Ford collected directly from ARO's customers for Motorcraft parts. Equitable, however, is not entitled to this money by virtue of our reasoning that Ford's security interest survived the transfer of inventory to ARO